OPINION OF THE COURT
Hancock, Jr., J.
The plaintiff was a resident of one of several apartment buildings in a housing complex when she was abducted and raped by an assailant inside her building. In opposing defendant’s motion for summary judgment, plaintiff produced evidence of violent criminal activity in the housing complex and of dangerous conditions in the building where she resided. The Appellate Division granted defendant summary judgment, however, holding that plaintiffs allegations contained insufficient "experiential evidence” of criminal activity to raise a triable issue as to foreseeability of crime in her own building. We conclude that the evidence adduced by plaintiff was sufficient to raise a triable issue of foreseeability so as to require denial of summary judgment. There should, therefore, be a reversal.
I.
In September 1988, plaintiff, a 14-year-old resident of the Wagner Houses public housing project in upper Manhattan, was abducted in the lobby of her apartment building, taken to a utility room on the roof of the building and raped. In her deposition testimony, Housing Authority Police Officer Juliet Jackson stated that she had responded to several reports of forcible rape in the Wagner Houses, which "usually occur on the roof or roof landing” of the buildings, and to "20 or more” forcible robberies. Jackson could not recall in which buildings the crimes occurred, but did not exclude plaintiffs. In addition, Nelson Santoni, the assistant superintendent of the Wagner Houses testified that empty crack vials, needles, syringes and drug paraphernalia were found "[throughout the entire development, roof landing, stairways, lobbies, corridors, basement, grounds, [and] outside ground areas”. During the period he was at the Wagner Houses, he found "numerous drug addicts on the roof * * * [and that] they would either sleep on the roof landing, sleep on the stairway, [or] in the *292 corridors. You find them all over the place.” Intruders, according to Santoni, could be found "all over the place”. Officer Jackson stated that when she found people on the roof, "[t]hey’re usually doing drugs”. Indeed, Jackson testified that she always approached the door to a roof with her gun drawn because "you don’t know what is on the other side of that door”.
Despite these conditions, as well as numerous complaints from tenants, neither the door to the lobby nor the door to the utility room on the roof was locked and no security personnel were stationed in the building. Carl Schwartz, the housing assistant of the Wagner Houses stated that "[a]s long as I have been in Wagner Houses, which is approximately a year, none of [the entrance doors] had locks”. Officer Jackson said that it was known that the utility room on the roof of plaintiff’s building had a mattress in it and that she had never seen a lock on the door to the room. When asked why these doors were kept open and were not locked, Jackson responded, "You have to ask management that”.
A referendum vote had been held in 1988 pursuant to Multiple Dwelling Law § 50-a (3) regarding installation of self-closing, self-locking doors and an intercommunication system, but a majority of the tenants of the 22-building complex rejected the plan. No evidence was submitted, however, as to whether a majority of the tenants in plaintiff’s building had rejected the proposed security measures.
Plaintiff commenced the present action alleging breach of a common-law duty to provide adequate security.[1] Supreme Court denied defendant’s motion and plaintiff’s cross motion for summary judgment. On defendant’s appeal, the Appellate Division reversed, holding that defendant had fully complied with its statutory obligations under the Multiple Dwelling Law and that plaintiff had failed to establish a common-law duty to provide greater security because there was no showing of a specific instance of crime occurring in plaintiff’s building. The Court stated:
"A landlord does have a common law duty to provide security to its tenants. However, that duty rests upon the foreseeability of the particular danger which proximately causes the harm * * * A Housing Authority police officer did testify as to *293 her responding to calls on forcible rapes and robberies at the Wagner Houses prior to this occasion, but could recall no specific instance at this particular apartment building. The Housing Authority is not an insurer of plaintiffs safety * * * Without experiential evidence indicating the reasonable foreseeability of such a danger, a landlord’s duty, under common law standards, will require only ' "minimal” ’ safety precautions” (182 AD2d 514, 515 [emphasis added]).
Since, according to the Appellate Division, defendant was relieved of any statutory obligation by the tenants’ vote, that Court reversed and granted summary judgment dismissing the complaint.
II.
We discuss first defendant’s contention that the requirements of the Multiple Dwelling Law supplant the common-law duty to provide adequate security and constitute the exclusive basis for liability. Multiple Dwelling Law § 50-a (3) mandates installation of self-closing, self-locking doors and an intercommunication system in buildings constructed before 1968 upon the request or consent of the tenants "occupying a majority of all the apartments within the structure comprising the multiple dwelling affected” (emphasis added).[2] If a majority of tenants of the particular building reject the installation of such devices, then no installation is mandated by the statute. Contrary to defendant’s claim, however, nothing in section 50-a (3) suggests that its terms supersede common-law duties and obligations such that a negative vote of the tenants relieves a landlord from any obligation to install security devices. Irrespective of the absence of a statutory obligation, the landlord remains subject to the common-law duty to take minimal *294 precautions to protect tenants from foreseeable harm. A negative vote of the tenants in a particular building has no effect other than absolving the owner of the mandatory duty that Multiple Dwelling Law § 50-a (3) might otherwise impose.[3]
Turning to defendant’s common-law duty, we reject the argument that plaintiff’s allegations are insufficient to raise a triable issue as to the foreseeability of the violent assault on plaintiff merely because the housing police could not recall whether the violent criminal activity known to have occurred in the Wagner Houses took place inside the specific Wagner House structure where plaintiff resided. We have never adopted the restrictive rule urged by defendant and apparently embraced by the Appellate Division: that to establish the foreseeable danger from criminal activity necessary for liability, the operative proof must be limited to crimes actually occurring in the specific building where the attack took place (see, Miller v State of New York, 62 NY2d 506; Nallan v Helmsley-Spear, Inc., 50 NY2d 507; see generally, Prosser and Keeton, Torts § 63, at 442-443 [5th ed]; Annotation, Landlord’s Obligation to Protect Tenant Against Criminal Activities of Third Persons, 43 ALR3d 331). In Nallan v Helmsley-Spear, Inc., which recognized the duty of landlords to take steps to minimize foreseeable danger from criminal acts, we cast foreseeability more generally — i.e., in terms of "past experience 'that there is a likelihood of conduct on the part of third persons * * * which is likely to endanger the safety of the visitor’ ” (id., at 519).
There is no requirement in Nallan or Miller that the past experience relied on to establish foreseeability be of criminal activity at the exact location where plaintiff was harmed or that it be of the same type of criminal conduct to which plaintiff was subjected. Indeed, in Miller, the occurrence of criminal activity in plaintiff’s college dormitory was held to be *295 foreseeable, in part, because of different criminal conduct occurring in other dormitories on the same campus (see, Miller, supra, at 509). Whether knowledge of criminal activities occurring at various points within a unified public housing complex, such as Wagner Houses, can be sufficient to make injury to a person in one of the buildings foreseeable, must depend on the location, nature and extent of those previous criminal activities and their similarity, proximity or other relationship to the crime in question (see, e.g., Keenan v Dayton Beach Park No. 1 Corp., 175 AD2d 862; see also, Trentacost v Brussel, 82 NJ 214, 412 A2d 436; Czerwinski v Sunrise Point Condominium, 540 So 2d 199 [Fla App]; Paterson v Deeb, 472 So 2d 1210 [Fla App]; Bayshore Co. v Pruitt, 175 Ga App 679, 334 SE2d 213).
We conclude that enough has been shown to raise a triable issue as to foreseeability. Plaintiff’s submissions showed, among other things, that there was evidence of drug-related criminal activity in her building and that vagrants and drug addicts readily gained access to and loitered in the corridors, stairwells and on the roof of plaintiff’s building. The Housing Authority police, it appeared, had responded to numerous reports of forcible rapes and robberies in the Wagner Houses and Officer Jackson could not recall whether some of these violent crimes had occurred in plaintiff’s building. The Housing Authority was aware that neither the doors to the lobbies of the buildings nor the doors to the utility rooms on the roofs were equipped with locks.
Contrary to the assertions of the dissent, our decision does not impose a "burden of impossible practical and functional dimensions” (see, dissenting opn, at 296). Nor does it extend the rule of Nallan and Miller (see, id., at 297). We hold merely that, in the circumstances, given the Authority’s conceded failure to supply even the most rudimentary security — e.g., locks for the entrances — it was error to grant summary judgment on the question of foreseeability of danger from a violent crime (see, Phillips v Kantor & Co., 31 NY2d 307, 311 [summary judgment should be denied if there is a doubt as to whether there is a material, triable issue of fact]).
Accordingly, the order of the Appellate Division should be reversed, with costs, and defendant New York City Housing Authority’s motion for summary judgment denied.
Bellacosa, J.

. Although originally commenced against both the City of New York and the Housing Authority, action against the City was discontinued.

. In pertinent part, section 50-a (3) requires that every multiple dwelling: "shall be equipped with automatic self-closing and self-locking doors, which doors shall be kept locked except when an attendant shall actually be on duty, and with the intercommunication system described in paragraph two of this section, provided that tenants occupying a majority of all the apartments within the structure comprising the multiple dwelling affected request or consent in writing to the installation of such doors and intercommunication system * * * The terms under which such costs may be recovered shall be the same as those prescribed by the local city housing rent agency * * * Such costs shall not be deemed to be 'rent’ as that term is limited and defined in the contract.”

. Contrary to the Appellate Division’s conclusion, the record in this case does not substantiate defendant’s contention that a vote of the tenants in plaintiffs building did not trigger the obligation under Multiple Dwelling Law § 50-a (3). In its motion for summary judgment, the Housing Authority submitted a conclusory affidavit stating merely that the "tenants [of the Wagner Houses] rejected the installation of the aforementioned system by majority vote”. The Housing Authority provided neither a tally of the votes nor the results pertaining specifically to plaintiffs building. Without evidence that a majority of the tenants in the particular structure where plaintiff resided had rejected the security measures, it cannot be established that the referendum did not impose a statutory duty to install security devices.