(March 2, 1995)

■ DAWN KELLMAN, Respondent, v 45 TIEMANN ASSOCIATES, INC., Appellant, et al., Defendants. [622 NYS2d 958] —Order, Supreme Court, New York County (Beverly Cohen, J.), entered on or about March 1, 1994, which, *inter alia,* denied defendant Tiemann's motion for summary judgment, affirmed, without costs.

Assuming arguendo that all statutory and regulatory provisions concerning fire escapes since 1929 had to have been and were complied with, questions of fact exist which preclude summary judgment concerning defendant-appellant's alleged violation of its common law duty to maintain its premises in a reasonably safe condition *(see, Basso v Miller,* 40 NY2d 233). A jury may still find, under the circumstances, that even if the relevant statutes were complied with, the landlord violated its common law duty since it is reasonably foreseeable that a tenant would go out onto his or her fire escape and sustain injuries by inadvertently misstepping and falling through the stairway opening in the fire escape landing. We also note that even if said defendant was not obligated to comply with any statutory or regulatory obligations, it still "remain[ed] subject to the common-law duty to take minimal precautions to protect tenants from foreseeable harm" *(Jacqueline S. v City of New York,* 81 NY2d 288, 293-294).

We further note that in light of the uncontroverted evidence that plaintiff was rendered paraplegic as a result of the accident, and since she is receiving Social Security disability payments to help meet her financial burdens, it was not an abuse of discretion for the IAS Court to grant plaintiff a special trial preference in the interest of justice (CPLR 3403 [a] [3]).

We have considered all other claims and find them to be meritless. In light of our disposition, plaintiff's motion to strike portions of defendant-appellant's reply brief is denied as academic, and said defendant's cross motion to supplement the record is also denied. Concur—Rosenberger, Wallach, Kupferman and Asch, JJ.

Murphy, P. J., dissents in a memorandum as follows: I would reverse and dismiss the complaint.

The plaintiff became paralyzed as the result of a fall through the hatchway of a fire escape on the apartment building in which she resided. She was cleaning the windows of her apartment at the time of the fall. She was standing on a twelve inch wide section of the fire escape and stepped backward falling into the hatchway. There were no safety guards around the hatchway.

It is clear from the record that there is no statutory duty to install safety guards under either sections 53 or 62 of the Multiple Dwelling Law, or under section 27-380 of the Administrative Code of the City of New York. The building and fire escape were constructed in 1909. Multiple Dwelling Law § 53, by its terms, requires safety guards only on fire escape hatchways on buildings constructed after April 18, 1929. Multiple Dwelling Law § 9 (10) requires a building owner to conform with the requirements of section 53 if the number of living rooms increased by 20%. It is clear from the record that the number of "living rooms" as defined in Multiple Dwelling Law § 4 (18) has not increased by 20% (see, Multiple Dwelling Law § 9 [10]).

Nor can liability be grounded on the landlord's common law duty to maintain the premises to protect against foreseeable harm (Basso v Miller, 40 NY2d 233; Lesocovich v 180 Madison Ave. Corp., 81 NY2d 982; Jacqueline S. v City of New York, 81 NY2d 288).

The principal case relied on by plaintiff is readily distinguishable both on its facts and its primary dispositive legal principle. Lesocovich v 180 Madison Ave. Corp. (81 NY2d 982, supra) involved a claim against the owner of a three story mixed use building in Albany, with one apartment on each of the upper floors and a commercial establishment on the ground floor. The building antedated the requirements of Multiple Dwelling Law § 62. The plaintiff, a guest of the tenant, fell from a roof landing over a one story portion of the building that was accessible only through a bedroom window of the second floor apartment. The roof landing had no railing

or parapet walls, and was used at the time of the accident for a social gathering, despite not being part of the demised premises. A door accessing an enclosed porch from the apartment had previously been sealed off, and the tenant had accessed the porch from the roof landing through a door that opened onto the roof landing. The tenant had never been instructed by the landlord not to use the roof landing. Requirements for an unprotected roof landing which leads to a door to an enclosed porch must be viewed differently from those for a fire escape. To impose a requirement on an owner to install protective railings on a uniquely dangerous roof landing has no widespread consequences to other building owners. Imposing liability for failure to take protective measures that would comply with the requirements of Multiple Dwelling Law § 62 on thousands of buildings constructed before 1929, a duty that the Legislature specifically declined to impose, has far reaching economic consequences, and affects mostly marginal tenements, ones that have not had sufficient money invested in them to require compliance with modern standards, and many of which are now *in rem* buildings owned by the City of New York.

In *Lesocovich,* unlike the present case, there was substantial evidence that the amount spent on renovations to the building required the owner to comply with the State Uniform Fire Prevention and Building Code pursuant to 9 NYCRR 1231.3 (b). There is no claim that this provision applies in the case at bar.

The other case principally relied upon by plaintiff relates to a landlord's common law duty to take minimal precautions to protect tenants from criminal activity, and has no relevance to the facts at bar. *Jacqueline S. v City of New York* (81 NY2d 288, *supra)* held that a factual question was presented whether the New York City Housing Authority breached its common law duty by failing to install a door lock on a rooftop utility room where the plaintiff was raped, and failure to take other minimal security measures in the face of repeated instances of criminal activity.

In both *Jacqueline S.* and *Lesocovich* the crucial element of experiential evidence was invoked to hold that the landlord had notice of an unreasonably dangerous condition. In *Lesocovich,* the presence of cinder blocks on the roof, presumably used for sitting, and the existence of the enclosed porch, accessible to the tenant only by way of the roof, put the landlord on notice of the foreseeability of a tenant walking on the unprotected roof.

In the present case, there is no such experiential evidence. The fire escape was duly inspected by the Department of Buildings, and the lease provided that the tenant was not to permit the windows to be washed from the outside. While there is conflicting evidence whether the sash was removable allowing the windows to be washed from the inside, there is no evidence of any prior incident involving the fire escape.

These cases must be considered under the rule of *Basso v Miller (supra)*, which involved a claim for injuries to a motorcycle passenger as a result of defendant's failure to maintain the driveway to its commercial establishment. The significance of *Basso* was that the Court of Appeals announced a uniform rule abolishing the distinctions among trespasser, licensee, and invitee, and imposed " ' "on owners and occupiers a single duty of reasonable care in all the circumstances" ' " (40 NY2d, *supra,* at 240, quoting *Kermarec v Compagnie Generale,* 358 US 625, 631). The purpose of *Basso* was not to make every claim against a landowner a factual issue, but to bring New York law into accordance with the modern trend begun some twenty years earlier, abolishing these Nineteenth Century distinctions of status. As the Court in *Basso* stated: "Only in those cases where there arises a real question as to the landowner's negligence should the jury be permitted to proceed. * * * [T]he function of the court and the standard of proof remain the same" (40 NY2d, *supra,* at 242).

This fire escape, like thousands of other pre-1929 fire escapes in the City of New York that do not have safety guards, complied with all applicable laws. It had recently been inspected by the Department of Buildings with respect to a prior violation involving the presence of flower pots, and after inspection by the Department of Buildings the violation was removed. The Department indicated no other violation concerning the condition of the fire escape.

This is precisely the kind of case where the proof of negligence falls short and the function of the court is to dismiss the complaint. As Chief Judge Breitel warned in his concurring opinion in *Basso:* "candor compels recognition of the propensity of juries, motivated by sympathy, to allow injured plaintiffs * * * to recover even when the law would seem to suggest an opposite result [citations omitted]. The 'single standard' provides hospitable ground for the play of jury *ad hoc* promulgation of 'rules' of law, social policy, and sometimes humane but ungoverned and ungovernable sympathy" *(supra,* at 248). This case illustrates precisely the situation Chief Judge Breitel anticipated, where the court's function in

applying the correct rule of law can be ceded to the jury under the single standard, and liability is predicated on sympathy considering the magnitude of plaintiff's injuries, rather than on the negligence of the defendant, governed by neutral legal principles.