(December 29, 1998)

■ LUNDES GARRETT, Respondent, v TWIN PARKS NORTHEAST SITE 2 HOUSES, INC., et al., Appellants and Third-Party Plaintiffs-Appellants-Respondents. APEX INVESTIGATIONS AND SECURITY Co., INC., Third-Party Defendant-Respondent-Appellant. [682 NYS2d 349] —Order, Supreme Court, Bronx County (Jerry Crispino, J.), entered July 24, 1997, which denied defendants' motion for summary judgment dismissing the complaint; order, same court and Justice, entered on or about October 22, 1997, which denied third-party defendant's motion for summary judgment dismissing the complaint and third-party complaint; and order, same court and Justice, entered December 3, 1997, which, to the extent appealable, granted defendants' motion to renew and reargue and thereupon adhered to its original determination, affirmed, without costs. Third-party defendant's appeal from that portion of the December 3, 1997 order denying its cross motion to reargue, dismissed, without costs, as no appeal lies from the denial of a motion to reargue.

Wallach and Rubin, JJ., concur in a memorandum by Rubin, J.; Saxe, J., concurs in a separate memorandum, and Lerner, P. J., dissents in a separate memorandum, all as follows:

RUBIN, J. (concurring).

On May 10, 1993, plaintiff, an unarmed security guard at defendant's apartment complex in the employ of third-party defendant-respondent-appellant Apex Investigations and Security Co., Inc., was assaulted in the lobby by a man and two accomplices, all of whom gained access to the area through the unlocked front door of the building located at 2311 Southern Boulevard. After plaintiff evaded the unidentified man's attempt to strike him in the face and eluded the two accomplices, the man produced a gun from the front pocket of his trousers and shot plaintiff in the chest.

Plaintiff is unable to identify the intruders and does not know whether they are residents of the apartment complex or not. Defendants therefore sought to dismiss the action on the ground that no liability can be imposed for failure to maintain premises so as to prevent unauthorized entry if it cannot be demonstrated that the assailant was in fact an intruder and not a resident or invitee (*see, e.g., Cortes v New York City Hous. Auth.*, 248 AD2d 191, *lv granted* 92 NY2d 808; *Pena v New York City Hous. Auth.*, 195 AD2d 395). As this Court explained in *Maria S. v Willow Enters.* (234 AD2d 177, 178):

"It is well established that a landlord's duty to maintain his

property in a safe condition includes the taking of minimal precautions to protect against the reasonably foreseeable criminal acts of third persons (*Nallan v Helmsley-Spear, Inc.*, 50 NY2d 507, 519; *Provenzano v Roslyn Gardens Tenants Corp.*, 190 AD2d 718, 720), and that duty arises where the party possessing the property knows or has reason to know of a likelihood of conduct by third persons which is likely to endanger the public (*Nallan v Helmsley-Spear, Inc., supra; Rivera v Lazo*, 230 AD2d 662).

"However, it is equally clear that absent proof of how the perpetrator gained entry to the premises, any negligence claim premised on the theory that defendants' inadequate security measures permitted the intruder to gain access to the premises necessarily involves speculation on the issue of proximate cause, and will not survive defendants' motion for summary judgment (*see, Kirsten M. v. Bettina Equities Co.*, 222 AD2d 201, *lv denied* 88 NY2d 813; *Rojas v Lynn*, 218 AD2d 611, *lv denied* 87 NY2d 804; *Wright v New York City Hous. Auth.*, 208 AD2d 327, 330)."

By contrast, liability in the instant matter is predicated on the independent basis that defendants were well aware of criminal activity at the premises and had been apprised of the inadequacy of security measures. The record contains evidence in the form of incident reports, covering the approximately two-year period prior to the assault on plaintiff, that document the crimes of homicide, robbery, and assault at the premises, including several incidents of assaults against security officers. In addition, the record includes a letter by the president of third-party defendant Apex Investigations to the president of defendant R.Y. Management Co., written some eight months before the attack upon plaintiff, complaining about inadequate security and the danger that conditions at the apartment complex pose to his employees. The premises, which comprise two adjoining buildings containing over 200 dwelling units, are described as being "infested" by drug dealers. The letter recommends "a minimum of six guards, armed and manned [*sic*] with dogs to be placed at 2311 Southern Boulevard".

Plaintiff's theory of liability posits a duty to take reasonable security precautions beyond, and apart from, the mere maintenance of door locks and entry systems (*see, Miller v State of New York*, 62 NY2d 506, 513; *Nallan v Helmsley-Spear, Inc., supra*, at 520; *see also, Jacqueline S. v City of New York*, 81 NY2d 288, 294-295). In this context, the Court of Appeals' recent decision in *Burgos v Aqueduct Realty Corp.* (92 NY2d 544, 548), relied upon by the dissenter, is inapposite, dealing

with "the 'common-law duty to take minimal precautions to protect tenants from foreseeable harm' " (quoting *Jacqueline S. v City of New York*, *supra*, at 293-294). The obligation imposed on the possessor of land to exercise reasonable care to undertake protective measures to safeguard persons on its property from assault by third parties does not depend on a plaintiff's status as tenant, business invitee or mere visitor (*Nallan v Helmsley-Spear, Inc.*, *supra*, at 519-520; *Basso v Miller*, 40 NY2d 233). Moreover, whether particular precautions are adequate to fulfill the landlord's obligation is almost always a question of fact for the jury based upon the nature of risk presented and the availability of security measures (*Nallan v Helmsley-Spear, Inc.*, *supra*, at 520, n 8; *Carroll v Ar De Realty Corp.*, 167 AD2d 216; *Gilmartin v Helmsley-Spear, Inc.*, 162 AD2d 275; *Loeser v Nathan Hale Gardens*, 73 AD2d 187, 190-191). The record before this Court raises significant factual questions with regard to whether that duty was breached by defendant and, if so, whether such breach was the proximate cause of plaintiff's injuries (*see, e.g., Jacqueline S. v City of New York*, *supra*, at 295; *King v Resource Prop. Mgt. Corp.*, 245 AD2d 10; *Rivera v 21st Century Rest.*, 199 AD2d 14, 15; *Beatty v National Assn. for Advancement of Colored People*, 194 AD2d 361, 364, *lv denied* 82 NY2d 662).

SAXE, J. (concurring).

I agree with the reasoning of Justice Rubin's concurrence, except in one respect. I conclude that the standard so clearly pronounced in *Jacqueline S. v City of New York* (81 NY2d 288), and reasserted in *Burgos v Aqueduct Realty Corp.* (92 NY2d 544), applies to this case, notwithstanding the plaintiff's status as invitee rather than tenant.

The obligation imposed by the common law upon the landowner, to take a degree of precautionary measures to protect against the risk of harm from foreseeable criminal attack, was discussed at length in *Nallan v Helmsley-Spear, Inc.* (50 NY2d 507). Then, in *Jacqueline S. v City of New York* (81 NY2d 288, 293-294, *supra*), the Court enunciated the landlord's common law obligation, at least as regards tenants, as a "duty to take minimal precautions to protect tenants from foreseeable harm". However, there is no indication that the Court in *Jacqueline S.* was attempting to define a distinct duty to be applied to landlords only as toward their tenants (i.e., to take *minimal* precautions against foreseeable criminal activity), while the duty the law already imposed upon landlords as to others, such as invitees, remained broader (i.e., to take reasonable precautionary measures against foreseeable criminal activity). Indeed,

the *Jacqueline S.* case relied upon, and built upon, its recognition that in the *Nallan* case it had previously recognized "the duty of landlords to take steps to minimize foreseeable danger from criminal acts" (81 NY2d, *supra,* at 294).

Despite my disagreement with the majority as to the applicable standard to be applied to the landlord's conduct, I agree that issues of fact are presented as to whether the landlord breached its duty, and as to the foreseeability of the criminal conduct to which plaintiff was subjected.

LERNER, P. J. (dissenting).

I respectfully dissent and vote to reverse. The plaintiff, who did not reside on the premises, is unable to demonstrate the existence of any duty owed to him or of any breach of a duty.

While the majority posits liability on the "inadequacy of security measures", the test imposed by the Court of Appeals is one of "minimal" security (*Burgos v Aqueduct Realty Corp.,* 92 NY2d 544; *Miller v State of New York,* 62 NY2d 506). To submit the issue of whether security was "adequate" to a jury is to virtually direct a verdict against the landowner. Obviously the security was inadequate. Had it been adequate to prevent the assault upon plaintiff, there would have been no assault. The "adequate security" formula would cast these defendants in the role of insurers. It is respectfully suggested that this is not a role contemplated by the Legislature or by the Court of Appeals.

In the case at bar, defendants, which were apprised of the high level of crime in the building, adopted security measures which were reasonable under the circumstances and were more than "minimal". In doing so they satisfied their duty to provide minimal security. There were security guards on the premises. The plaintiff himself was one. A landowner who allocates substantial resources for security should be deemed to have satisfied its minimal duty. It cannot guarantee that the security measures will prevent a particular crime; it cannot guarantee that the security devices will not be vandalized.

To suggest that because a letter was sent to the landowner recommending that the guards be armed (these guards were not), and that this assault would not have occurred but for that purported deficiency, requires a very great leap of faith. As a matter of cruel fact, it has too often been demonstrated that even the presence of highly armed and well trained soldiers cannot insure the safety of certain premises.

The letter sent to the landowner advising it of the high level of crime and recommending a minimum of six armed guards

accompanied by dogs is immaterial. Forseeability does not give rise to a duty where none otherwise exists (*Pulka v Edelman*, 40 NY2d 781). To hold that such a letter may suffice to establish a triable issue of fact is to invite a mass mailing to all residential landowners in high crime areas giving notice of local crime statistics and gratuitously suggesting that armed guards be hired. It should be for the Legislature, if it deems it appropriate, to impose a duty on landowners to provide armed guards, not this Court nor a lay jury.

In *Jacqueline S. v City of New York* (81 NY2d 288), the Court of Appeals created a new classification of persons to whom a duty, arising out of a special relation, would be owed. Under common law, residential landowners and their tenants had no special relation from which a duty of protection flowed.

In *Jacqueline S.*, the Court found that the defendant-landowner did owe a duty, under certain circumstances, to protect a tenant who had been assaulted, thus establishing a special relation between residential landowners and their tenants. The Court held that assuming a high level of crime in a residential building or in the vicinity of the building, the landowner must bear the burden and expense of providing minimal security to the tenants. That the duty was owed to tenants was reiterated in *Burgos*. To impose liability in this case would require the establishment of a special relation between landowners and non-tenants such as this plaintiff, thus expanding greatly the class of potential plaintiffs.

The record here discloses that not only was more than minimal security provided but that defendants' security devices were routinely destroyed by tenants and non-tenants. Residential landowners cannot be expected to maintain a constant vigil to ensure the integrity of the security measures which were provided. To demonstrate a breach of duty, even were one to exist, there must be a showing of some departure from accepted standards of reasonable care. There was no such showing here.

Defendants' acts were reasonable as a matter of law. To hold otherwise will permit a jury to find that a duty is owed to protect outsiders (non-tenants) from outsiders (intruders). The existence of a duty to keep tenants safe in their homes should not be expanded to posit a duty to those who have no justifiable expectation that they would be provided such security and from whom the cost of these security measures cannot be recovered. To hold otherwise will permit a jury to find that, notwithstanding the expenditure of substantial monies for security, "minimal" security was not provided.