[686 NYS2d 49]

Luisa R., Appellant, v City of New York et al., Respondents.

First Department, March 4, 1999

### APPEARANCES OF COUNSEL

*John E. Fitzgerald* of counsel (*Deborah P. Henkin, Michael D. Neuman* and *John M. Daly* on the brief; *Fitzgerald & Fitzgerald, P. C.,* attorneys), for appellant.

*Ronald E. Sternberg* of counsel (*Leonard Koerner* on the brief; *Michael D. Hess, Corporation Counsel* of New York City, attorney), for respondents.

### OPINION OF THE COURT

MAZZARELLI, J.

On April 3, 1990, plaintiff was returning to her fourth-floor apartment located at 450 East 136th Street, Bronx, New York (building), when a Hispanic man wearing blue jeans and a stocking on his head pushed her into the apartment from behind, and then assaulted and raped her. Plaintiff's assailant was never apprehended nor identified. However, plaintiff remembers seeing a man dressed like the attacker in the lobby of her building a few hours before the attack, loitering in the presence of drug dealers.

The building was owned and managed by the City and its Department of Housing Preservation and Development (HPD).

Plaintiff moved into the building in May 1989, and during the time she lived there, only 3 of the 8 apartments were occupied. From the beginning, plaintiff noticed that the common areas of the building were dirty and in a state of disrepair. The locks to the front door of the building and the vacant apartments were consistently broken, as was the intercom system. Further, nontenant drug dealers continually congregated in the lobby of the building and performed drug transactions there. During the winter months, several of the drug dealers lived in the vacant apartments.

During September and October of 1989, plaintiff became so fearful of the constant presence of the intruders in the building that she called defendant's building manager nearly every day to request that they be removed. The building manager visited the building four times in late 1989 and reported the drug activity to HPD's Narcotic Group, which investigated the matter and confirmed that drug dealers were living and selling drugs in the building.

Plaintiff also complained to the police. She had several phone conversations with a Police Officer Garcia, who told her to "try to stay calm and don't mess with these people because [she] could get harmed." Although plaintiff expressed her desire to have the drug dealers removed from the building, according to Garcia she also said that she was hesitant to have the police make arrests because, with the small number of tenants in the building, she feared that the dealers would "narrow it down to her" and retaliate against her. Indeed, Garcia testified at his deposition that "[plaintiff] practically told me that she really didn't want anything being done at the location."

Around January 1990, after Garcia encouraged plaintiff to go in person to the precinct, the police made several arrests in plaintiff's building for narcotics offenses. Additionally, City employees came to the building and sealed up the vacant apartments, and, according to plaintiff, told her that "they were going to fix the building, that all that was going to end." However, after the drug activity resumed almost immediately, Garcia told plaintiff "that he couldn't do anything else because those people who were arrested were free one day after, so he couldn't do anything about it."

In June 1990, plaintiff commenced the instant action for personal injuries against the City, HPD and the Police Department. In a single cause of action for negligence, plaintiff asserts at least three separate theories of liability. Plaintiff first alleges that the City and HPD were negligent in their capacity

as landowners in allowing "a dangerous and hazardous condition to exist" on the premises. She further claims they were negligent in failing to take reasonable precautionary measures to secure the premises against intruders (e.g., functioning locks, an intercom system or otherwise) despite notice of prior criminal activity on the premises by nontenants. Lastly, plaintiff complains that the Police Department assumed a special duty to protect her, and negligently failed to fulfill such duty.

Defendants moved for summary judgment, arguing that no special duty existed to provide police protection to plaintiff, and that plaintiff's inadequate security claim should be dismissed because the element of proximate cause could not be established since there was no evidence that the assailant was an intruder, rather than a tenant or an invitee. Accepting both of these arguments, the IAS Court granted defendants' motion for summary judgment. The court also denied plaintiff's cross motion to amend her complaint to allege a violation of Real Property Law § 231 (2), finding that section inapplicable.

■ The IAS Court erred in granting summary judgment dismissing plaintiff's common-law negligence claim based on inadequate security. Preliminarily, the court improperly read plaintiff's complaint as alleging only a failure by defendants to secure the outer doors and locks to the premises. The complaint clearly includes the independent allegation that, apart from any security failures at the building's entrances, defendants were independently negligent for failing to remove the drug dealers engaging in criminal activity on the premises. As case law has consistently recognized a landlord's common-law duty to take reasonable precautionary measures to protect members of the public from the reasonably foreseeable criminal acts of third persons on the premises (*see, Jacqueline S. v City of New York*, 81 NY2d 288, 293-294; *Garrett v Twin Parks Northeast Site 2 Houses*, 256 AD2d 224; *Beatty v National Assn. for Advancement of Colored People*, 194 AD2d 361, 364, *lv denied* 82 NY2d 662), plaintiff's additional theory of negligence, not ruled on by the IAS Court, is also viable.

■ Plaintiff has raised a triable issue of fact as to whether her injuries were a foreseeable result of defendants' inaction in failing to remove the drug dealers from the building (*see, Jacqueline S. v City of New York, supra,* at 294; *Rivera v Sebastian Enters.,* 243 AD2d 291). Here, plaintiff testified that the drug dealing was rampant in the building, that the drug deal-

ers had threatened her and had committed burglaries and that she communicated these illicit activities to defendants (*see, Bonano v S.Z. Realty Corp.*, 256 AD2d 268). Indeed, defendants do not dispute that they received numerous complaints of drug dealing in the building, and that arrests were made and vacant apartments were sealed in response thereto. Since the landlord was repeatedly informed of ongoing criminal activity in the building and took minimal efforts to stop it, "it was for the jury to determine whether the landlord's failure to evict the alleged drug dealers could serve as a predicate for liability for the plaintiff's injuries (*Simmons v City of New York*, 168 AD2d 230)." (*Beatty v National Assn. for Advancement of Colored People, supra,* at 364.)

Although there were no reported sexual assaults on the premises, there is no requirement that the prior criminal activity relied on to establish foreseeability "be of the same type of criminal conduct to which plaintiff was subjected" (*Jacqueline S. v City of New York, supra,* at 294). This is not a case where the plaintiff's assertions of prior criminal activity on the premises were conclusory (*cf., Ragona v Hamilton Hall Realty,* 251 AD2d 391), or that the type of prior criminal activity was so dissimilar to that which caused plaintiff's injuries that the latter was not reasonably foreseeable (*cf., Jarosz v 3135 Johnson Tenant Owners Corp.*, 246 AD2d 488).

We also find that a triable issue of fact has been raised on the issue of proximate cause. While a plaintiff in a negligence case must establish that the defendant's negligence was the proximate cause of his or her injuries, "[a] plaintiff is not required to exclude every other possible cause, but need only offer evidence from which proximate cause may be reasonably inferred [citations omitted]" (*Burgos v Aqueduct Realty Corp.*, 92 NY2d 544, 550). With respect to plaintiff's theory that defendants allowed a dangerous condition to exist on the premises, she has provided ample evidence from which it may be inferred that the failure to evict the drug dealers was a substantial factor in causing her injuries (*see, Beatty v National Assn. for Advancement of Colored People, supra*).

However, in a case alleging that the assailant gained access to the premises through a negligently maintained entrance, "plaintiff can recover only if the assailant was an intruder" (*Burgos v Aqueduct Realty Corp., supra,* at 551). Thus, to survive a defendant's motion for summary judgment a plaintiff must offer some evidence from which the assailant's intruder

status may be inferred (*supra*, at 551). Plaintiff has done so here. She submitted evidence that the building had very few tenants, all of whom she knew, rendering it less likely that the attacker was a tenant or an invitee. She further stated that for the entire time she lived there, the locks to the front entrance and intercom were broken. Additionally, she stated in an affidavit that she observed a man dressed exactly like her attacker in the lobby, in the presence of several nontenant drug dealers, prior to the attack. Thus, even apart from the police report that included a police informant's statement that the assailant was a drug purchaser who followed her to her apartment with the intent to rape her, which was rejected by the IAS Court as inadmissible hearsay, ample evidence existed from which the assailant's intruder status may be inferred (*supra*; *see also*, *Bonano v S.Z. Realty Corp.*, *supra*; *Cisse v S.F.J. Realty Corp.*, 256 AD2d 257).

■ We further disagree with the IAS Court's determination that Real Property Law § 231 (2) is inapplicable to the case at bar. That section provides that property owners who "knowingly leas[e] or giv[e] possession" of all or part of their property for unlawful use, or who "knowingly permit[ ] the same to be so used", shall be liable for any damage resulting from such unlawful use. The IAS Court found this section inapplicable because "there was no landlord and tenant or other relationship which would empower the municipal defendants to evict those engaging in unlawful conduct." We observe no such requirement in the statute. A cause of action is stated if plaintiff alleges that the landlord was given notice of persistent criminal activity on the premises creating the likelihood of injury to others, and further demonstrates a causal relationship between the complained-of activities and plaintiff's injuries (*Maria S. v Willow Enters.*, 234 AD2d 177, 178-179). We find no authority to limit the scope of this statute to mandating the removal *only* of tenants or other identified occupants.

As the cause of action alleging a violation of Real Property Law § 231 (2) is based on allegations already pleaded in plaintiff's common-law negligence claim (*see*, *Bamira v Greenberg*, 256 AD2d 237), and defendants have failed to demonstrate any prejudice by the amendment (*supra*; *see also*, *Napolitano v DGM-I Corp.*, 255 AD2d 567), or that the claim is barred by the Statute of Limitations (*see*, *Weitzenberg v Nassau County Dept. of Recreation & Parks*, 249 AD2d 538), amendment to include this cause of action should have been permitted.

■ However, we uphold the IAS Court's finding that no special relationship existed between the plaintiff and the Police Department so as to impose liability on the latter for failing to provide police protection. "A municipality may not be held liable for injuries resulting from the failure to provide police protection to an individual absent a 'special relationship' between the municipality and the individual (*Kircher v City of Jamestown*, 74 NY2d 251, 255; *Cuffy v City of New York*, 69 NY2d 255, 260)." (*Merced v City of New York*, 75 NY2d 798, 799-800.) "The elements of this 'special relationship' are: (1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking [citations omitted]." (*Cuffy v City of New York, supra,* at 260.)

While it is arguable that the police assumed a duty to act on plaintiff's behalf by virtue of making arrests at the building, the evidence establishes that plaintiff could not have justifiably relied on the Police Department's asserted promise to protect her. Police Officer Garcia testified at his deposition that plaintiff essentially told him that she did not want the police to make arrests in the building, and plaintiff herself conceded that Garcia told her that "he couldn't do anything about it." Under these circumstances, plaintiff could not have reasonably relied on any purported assumption by the police of a duty to protect her (*Riss v City of New York*, 22 NY2d 579). The vague assurances by City employees that they would "fix the building" cannot reasonably be construed as a promise of police protection.

Accordingly, the order of the Supreme Court, Bronx County (Douglas McKeon, J.), entered February 7, 1997, which, to the extent appealed from, granted defendants' motion for summary judgment dismissing the complaint and denied plaintiff's cross motion to amend her complaint to include a cause of action alleging a violation of Real Property Law § 231 (2), should be reversed, on the law, without costs, defendants' motion for summary judgment denied, and plaintiff's cross motion to amend her complaint granted.

SULLIVAN, J. P., NARDELLI and WILLIAMS, JJ., concur.

Order, Supreme Court, Bronx County, entered February 7, 1997, reversed, on the law, without costs, defendants' motion for summary judgment dismissing the complaint denied, and plaintiff's cross motion to amend her complaint to include a cause of action alleging a violation of Real Property Law § 231 (2) granted.