■ ROBERTO ROMERO, Appellant, v TWIN PARKS SOUTHEAST HOUSES, INC., et al., Respondents. [895 NYS2d 387]—

Judgment, Supreme Court, Bronx County (Betty Owen Stinson, J.), entered on or about March 4, 2009, dismissing the complaint, and bringing up for review the order (same court and Justice), entered on or about October 27, 2008, which granted defendants' motion and cross motion for summary dismissal, unanimously reversed, on the law, without costs, the motion and cross motion denied, and the complaint reinstated.

"Landlords have a 'common-law duty to take minimal precautions to protect tenants from foreseeable harm,' including a third party's foreseeable criminal conduct" (*Burgos v Aqueduct Realty Corp.*, 92 NY2d 544, 548 [1998], quoting *Jacqueline S. v City of New York*, 81 NY2d 288, 293-294 [1993]). However, an injured tenant may recover damages "only on a showing that the landlord's negligent conduct was a proximate cause of the injury" (*Burgos*, 92 NY2d at 548). Where the assailant remains unidentified, a plaintiff may meet his proximate cause burden "if the evidence renders it more likely or more reasonable than not that the assailant was an intruder who gained access to the premises through a negligently maintained entrance" (*id.* at 551).

The 240-apartment building at issue had a front entrance with a locked door and intercom, and a rear entrance leading to a parking lot through a locked door with no intercom. The building lobby was manned by security guards provided by defendant Mandel 24 hours per day. Mandel also provided a "roving guard" to patrol the building. Plaintiff alleges he was injured when an unknown assailant punched him in the face in the lobby and then ran away.

The security commander testified that the rear door lock was broken "most of the time." His testimony was at least partially corroborated by the security supervisor, who stated that sometimes "a couple days" would pass before a broken door lock was fixed. Plaintiff and the security supervisor, who witnessed the assault, both testified that the assailant was not a

tenant, and that they did not recognize him. Plaintiff thus met his burden of raising a triable issue of fact as to whether the assailant was an intruder who entered the building through a negligently maintained entranceway, namely, the rear door (cf. *Alvarez v Masaryk Towers Corp.*, 15 AD3d 428, 429 [2005]).

The security commander and security supervisor both testified that loitering in the building was prohibited. Visitors were required to sign in and were not permitted to "stand around in the lobby," and would be asked to leave if discovered. Notwithstanding this testimony, a written statement given about a month after the incident, which the security supervisor admittedly signed, indicated that the assailant was a "stranger" who had been "standing near the elevators" immediately prior to punching plaintiff in the face. This statement conflicted with the testimony that visitors were not allowed to loiter in the building, and also conflicted with the security supervisor's deposition testimony that plaintiff and the assailant had emerged from the elevator together, embroiled in an argument, immediately prior to the attack. If true, the written statement would be evidence of a breach of the security company's protocol for expelling loiterers. Notwithstanding the supervisor's assertion at his deposition that the statement had been drafted by a building legal representative, and that he was tired and simply signed without reading it, the conflict between the written statement and his deposition testimony goes to the supervisor's credibility, and raises a triable issue of fact as to whether Mandel had negligently permitted the assailant to loiter in the lobby immediately prior to the assault.

The evidence in the record of police reports of numerous crimes against building residents in the five years prior to the attack—including a number of misdemeanor and felony assaults, at least some of which appear to have occurred on the building premises—suffices to raise at least a triable issue as to the foreseeability of the attack against plaintiff, particularly as there is no requirement that the evidence of prior criminal activity be "limited to crimes actually occurring in the specific building where the attack took place" or be "at the exact location where plaintiff was harmed" (*Jacqueline S.*, 81 NY2d at 294).

Mandel's argument that regardless of any negligence on its part, it had no duty to plaintiff and cannot be held directly liable to him, is unavailing. Through no fault of plaintiff, the contract specifications that appear in the record are incomplete, and do not fully detail the scope of Mandel's security duties. Nevertheless, it is undisputed that under the contract, Mandel provided the building with around-the-clock security. Given the

magnitude of this deployment and the security guard's statutory function of preventing unlawful activity on designated property and protecting individuals from harm (*see* General Business Law § 89-f [6]), there is at least an issue of fact as to whether Mandel "entirely displaced" or "comprehensively absorbed" Twin Parks' duty to secure the building against crime (*Sprung v Command Sec. Corp.*, 38 AD3d 478, 479 [2007]). Concur—Gonzalez, P.J., Saxe, Moskowitz, Abdus-Salaam and Román, JJ.