[918 NYS2d 50]

RUAIRI KELLY, an Infant, by His Father and Natural Guardian, KEITH KELLY, et al., Appellants, v METROPOLITAN INSURANCE AND ANNUITY COMPANY et al., Respondents.

First Department, January 25, 2011

**APPEARANCES OF COUNSEL**

*Pollack, Pollack, Isaac & De Cicco*, New York City (*Brian J. Isaac* and *Michael H. Zhu* of counsel), for appellants.

*White & McSpedon, P.C.*, New York City (*Tracey Lyn Jarzombek* of counsel), for Metropolitan Insurance and Annuity Company and another, respondents.

*Marks O'Neill O'Brien & Courtney, P.C.*, Elmsford (*James M. Skelly* of counsel), for Yates Restoration Group, Ltd., respondent.

*Rubin, Fiorella & Friedman LLP*, New York City (*Paul Kovner* of counsel), for Spring Scaffolding, Inc., respondent.

## OPINION OF THE COURT

MANZANET-DANIELS, J.

While riding a bicycle on the grounds of Stuyvesant Town, where he lived with his family, the infant plaintiff struck the wooden base of one of the metal poles supporting a sidewalk shed that had been temporarily erected on the property. He was propelled from his bike, and hit and slid down the metal pole, landing on a sharp, rusty cross brace and uncapped bolt securing the structure. The infant plaintiff sustained debilitating injuries to his penis, including structural damage and loss of sensation, and had to undergo reconstructive plastic surgery to restore the normal function and appearance of his penis. At trial, the court dismissed the complaint as to defendant Rose Associates; after trial, the jury found for the three remaining defendants. Because the trial was tainted by error, we reverse, in the interest of justice, and order a new trial as to the three remaining defendants.[1]

On April 10, 2004, the infant plaintiff, then six years of age, went with his mother to one of the parks on the grounds of Stuyvesant Town, owned by defendant Metropolitan Insurance and Annuity Company and managed by defendant Rose Associates, Inc. The infant plaintiff saw another young boy riding a bicycle and convinced his mother that he, too, was ready to ride his bike without training wheels. The infant plaintiff's father removed the training wheels and the child began riding the bike. At that time, construction was underway on the premises. Defendant Yates Restoration Group, Ltd. was in the process of restoring the brickwork on several of the buildings, and defendant Spring Scaffolding, Inc. had erected a sidewalk shed to shield passersby from falling debris. The shed was constructed in the standard manner with a horizontal bar and diagonal cross beams nailed to vertical supports that were in turn staked to the ground on wooden blocks. The testimony showed that the diagonal cross brace was rusty, sharp "like a knife," and not rounded on the end. The testimony also showed that the bolts used to secure the cross braces were exposed and were not

---

1. After the verdict was rendered, plaintiffs' counsel made an oral application to set aside the verdict as against the weight of the evidence. That request was summarily denied by the trial court. The court informed the parties that any further post-trial applications were "deemed denied," such that they could immediately appeal.

capped or taped. The evidence showed that no provision of the New York City Building Code mandated that the ends of cross braces or the exposed and protruding bolts on sidewalk sheds be capped or taped (although capping or taping of bolts is required by the School Construction Authority in the vicinity of schools). While it was agreed by all that the Code was silent on the subject of capping or taping, the expert evidence conflicted as to whether it was industry practice to cap or tape the exposed ends of bolts and cross braces. Indeed, plaintiffs' case rested entirely on the premise that although the failure to cap or tape was not a Code violation, it was nonetheless negligent to fail to do so in this instance, citing industry practice and evidence that the shed was erected in close proximity to a children's park.

A reasonable view of the evidence, certainly, could support a verdict in plaintiffs' favor. However, the trial court effectively preempted the possibility of a plaintiffs' verdict by inappropriately interfering during the testimony of plaintiffs' expert witness.

The trial court interrupted plaintiffs' expert, commented several times that there was no Code violation, openly criticized and expressed dislike for the expert, and ultimately limited her testimony on the subject of defendants' negligence. The cumulative and unmistakable effect of this interference was to leave the jury with the impression that defendants could not be negligent in the absence of a Code violation. The trial court's treatment of plaintiffs' expert, who was critical to plaintiffs' case and without whom plaintiffs could not prevail, served to deprive plaintiffs of a fair trial.

During the direct testimony of plaintiffs' expert, the trial court sustained an objection to testimony that the Buildings Department required capping or taping. The defense complained that the expert had, in reaction to the court's ruling, "mouthed words to the jury." Though the witness denied saying anything, the court observed that the jurors were "shaking their heads yes." The court thereupon ordered the jury out of the courtroom, and questioned the expert and the attorneys regarding what had transpired. The court told the attorneys that it would speak to the jurors "one by one," and warned them that if the expert had said something, "there is a problem with this witness testifying at all." The witness was excused and the court proceeded to interrogate the jurors one by one. The first juror indicated that a "gesture" had been made. The second juror indicated that it appeared the expert hadn't agreed with what

the court had said. The court paused and asked whether plaintiffs' attorney wanted it to poll the entire jury. Plaintiffs' attorney demurred, saying "it is not really my issue, with all due respect," and that he was "not making that request." The court nonetheless continued to poll the jurors. The third juror said the expert had "just opened her mouth." The fourth juror said the expert's mouth "opened and closed, more in exasperation or a sigh." The fifth juror said the expert "gesticulated," "rais[ing] her shoulders" as if "surprised." The sixth juror said the expert made a "voiceless gesture." The final three jurors polled saw nothing.

Defense counsel moved to strike the expert's testimony in its entirety based on her "interference" with the jury. The plaintiffs' attorney objected, stating that "[a]t best, what you have here is a witness who sighed after a judicial ruling," noting that dissatisfaction with the court's ruling in no way equated with testimony prejudicial to defendants. The court expressed its exasperation with plaintiffs' expert, stating,

> "That's more than disrespectful, it is challenging the ruling of the Court, notwithstanding the Court's ruling in front of the jury . . . This is an experienced testifier. For her to come in here and to nonverbally communicate to the jury that I don't know what I'm doing is not okay."

The court noted that it was not appropriate to "penalize the plaintiff," and stated that it was going to "write a curative up." The court then backtracked, ruling that while it would allow the expert's testimony to stand, it would preclude any further testimony by the expert, stating, "You know why? Anything beyond that she's colored it by acting like she's some expert beyond what she should be doing with respect to saying what the Court—opining on the Court's ruling."

The court rejected plaintiffs' counsel's plea that she reconsider the ruling, further stating,

> "[T]he jury has to understand that . . . this Court has determined that . . . she did gesture, however you want to call it, was egregious and she has to be penalized for it. And the question is what's the penalty, and the penalty is other than the testimony that's relevant to this case her testimony is stricken. You have what you need which is you asked her a hypothetical opinion, you have her opinion, and she should now find her way out of here."

The court acknowledged that the argument that the brace and bolt should have been capped was a reasonable one, but stated "not through this witness any further."

Upon defense counsel's protests that they were unwilling to waive the right to cross-examination, the court again relented and allowed the witness to continue testifying. It prefaced the expert's further testimony with a curative instruction that neither the Building Code nor "codification of the industry standard" required that the cross brace or bolt be taped or capped and further stated,

> "If the credibility of this Court and the Court's ruling and the integrity of the judicial system are to be maintained, a witness cannot challenge the Court's rulings with impunity. The Court has admonished this witness to refrain from demonstrating in any manner displeasure or objection [sic] with the Court's rulings. Do you understand?"

■ Plaintiffs' expert thereafter opined that a protruding cross brace or bolt should be taped or capped "if it's within the reach of the public or the workers," and that the sidewalk shed structure would have been "safer" had both the bolt and cross brace been capped and/or taped. However, her testimony concerning industry standard was diluted by repeated objections and colloquies that left the jury with the impression that there was no industry standard on the subject of capping or taping (in contradistinction to a Code violation), impermissibly conflating the concepts of industry standard and Code violation, a distinction essential to plaintiffs' case.

■ The court rightfully took umbrage with what it perceived as the expert's lack of respect for the court. But rather than issuing a simple curative instruction, as would have been appropriate under the circumstances, the court interrogated each of the jurors individually concerning the nature of the gesture or sigh made by the expert. This protracted episode left the jurors with the distinct and unmistakable impression that the court disapproved of plaintiffs' expert and credited none of her testimony. Indeed, shortly following this interrogation, the court threatened to preclude plaintiffs' expert from testifying further, leaving plaintiffs without expert testimony on the crucial issue of defendants' negligence.

This prejudicial treatment of plaintiffs' expert is to be contrasted with the court's treatment of the defense expert, whom the court accorded wide latitude. Notably, the court did

not similarly chide the defense expert when he transgressed courtroom protocol. Defendants' expert, during direct, inappropriately interjected that the infant plaintiff "[p]robably should have left the [training wheels] on to begin with," a gratuitous statement intended to undermine the court's ruling that in light of the infant's age, neither he nor his parents could be considered comparatively negligent. This statement, in direct contravention of the court's ruling, arguably tainted the jury, and, unlike plaintiffs' expert's "sigh" or gesticulation, was an unambiguous statement, uttered directly to and intended to prejudice the jury. Indeed, plaintiffs' counsel pointed out that, in contradistinction to plaintiffs' expert, the defense expert had "intentionally responded . . . having nothing to do with the question to insert his opinion about the happening of the accident in the first place." The court agreed that the actions of the expert were "egregious," but nonetheless denied the plaintiffs' motion to strike his testimony, issuing instead a simple curative instruction.

■ The prejudice was compounded by the failure of the trial court to give the charge requested by plaintiffs, i.e., that the absence of a Building Code violation is not tantamount to the absence of negligence. This left the jury with the distinct impression that defendants' compliance with the Building Code was a defense to liability.

Indeed, it is black letter law that compliance with statutory or regulatory enactments does not preclude a finding that the defendant violated a common-law duty. "Irrespective of the absence of a statutory obligation, the landlord remains subject to the common-law duty to take minimal precautions to protect tenants from foreseeable harm" (*Jacqueline S. v City of New York*, 81 NY2d 288, 293-294 [1993] [landlord's compliance with procedures set forth in Multiple Dwelling Law regarding installation of locks not dispositive as to liability]; *see also Feiner v Calvin Klein, Ltd.*, 157 AD2d 501 [1990] [compliance with federal flammability regulations did not absolve defendant of liability]; *Mercogliano v Sears, Roebuck & Co.*, 303 AD2d 566 [2003] [defendants failed to establish prima facie entitlement to summary judgment based on conclusion of their expert that product complied with and exceeded standards set forth in federal regulations]; *Duncan v Corbetta*, 178 AD2d 459 [1991] [error to preclude plaintiffs' expert from testifying that it was common practice to use pressure-treated lumber in the construction of stairways, even though that practice exceeded the mini-

mum safety requirement for lumber under the applicable building code]).

■ Plaintiffs were further prejudiced by the fact that the trial court, over counsel's objections, allowed the introduction of evidence relating to the infant plaintiff's parents' alleged negligent supervision in allowing the infant plaintiff to ride a bicycle on the pathway at Stuyvesant Town, contrary to the lease and to signs posted on the premises. The common law, now codified at section 3-111 of the General Obligations Law, expressly prohibits the imputation of a parent's contributory negligence to an infant plaintiff.[2] During summations, defense counsel was allowed, improperly, to comment on the father's failure to be "next to [plaintiff] when his son lost control," and on the mother's comments about how "even with his training wheels, [the sidewalk bridge] was not the place to ride your bike." The refusal to sustain an objection to the latter comment was error since the issue of parental supervision is irrelevant to this action brought in the name of the infant plaintiff. The jury verdict was tainted by the introduction of this irrelevant and highly prejudicial evidence. The jury may well have concluded that in spite of the existence of a dangerous condition, plaintiff's parents were at fault for allowing him to ride under the sidewalk shed. Absent clarifying instructions, it cannot be assumed that the jury's finding of no negligence was not a product of the jury's consideration of these irrelevant and prejudicial issues.

■ Because these errors served cumulatively to deprive plaintiffs of a fair trial, we hereby modify the judgment as indicated, and order a new trial. We affirm the judgment in favor of Rose Associates, the managing agent, since the evidence failed to show that Rose assumed the owner's maintenance obligations or otherwise owed a duty to the infant plaintiff (see Espinal v Melville Snow Contrs., 98 NY2d 136 [2002]).

Accordingly, the judgment of the Supreme Court, New York County (Carol R. Edmead, J.), entered September 3, 2008, dismissing the complaint as against defendant Rose Associates, Inc., after the close of plaintiffs' evidence, and as against defendants Metropolitan Insurance and Annuity Company, Yates Restoration Group, Ltd., and Spring Scaffolding, Inc., after a jury verdict in their favor, should be modified, on the facts and

---

2. Further, the infant plaintiff was not a party to the lease and thus could not be bound by its terms.

in the exercise of discretion, the jury verdict vacated, the complaint reinstated as against defendants Metropolitan, Yates and Spring, and the matter remanded for a new trial as to those defendants, and otherwise affirmed, without costs.

MAZZARELLI, J.P., SWEENY, MOSKOWITZ and ROMÁN, JJ., concur.

Judgment, Supreme Court, New York County, entered September 3, 2008, modified, on the facts and in the exercise of discretion, the jury verdict vacated, the complaint reinstated as against defendants Metropolitan, Yates and Spring, and the matter remanded for a new trial as to those defendants, and otherwise affirmed, without costs.