■ BOLDIN BREWSTER, Appellant, v PRINCE APARTMENTS, INC., Respondent. [695 NYS2d 315] —Judgment, Supreme Court, Bronx County (Janice Bowman, J.), entered on or about March 18, 1998, dismissing the complaint, and bringing up for review an order, same court and Justice, entered September 15, 1997, granting defendant's motion to set aside a jury verdict in plaintiff's favor and ordering a new trial, and denying plaintiff's cross motion to amend the pleadings to conform to the trial evidence with respect to future psychiatric expenses, and a second order, same court and Justice, dated February 10, 1998, insofar as it granted defendant's cross motion for dismissal of the complaint, unanimously reversed, on the law, without costs, the judgment vacated, defendant's motion to set aside the verdict granted only to the extent that the award for future medical expenses in the amount of $420,000 is set aside as against the weight of the evidence, and a new trial ordered as to those damages, unless plaintiff stipulates, within 30 days of the date of this order, to accept the sum of $61,000 for future medical expenses, and the motion otherwise denied, and, irrespective of whether plaintiff so stipulates, the matter is remanded for a collateral source hearing pursuant to CPLR 4545 (c) as to past and future medical expenses.

On October 11, 1990, at 1:15 A.M., plaintiff was returning home from her employment as a nurse's aid at Metropolitan

Hospital when she was robbed and viciously beaten outside her first floor apartment by an assailant she subsequently identified to the police. She commenced this action against defendant, the owner of the building. Plaintiff alleges that defendant negligently failed to provide adequate security for the building by failing to repair a defective front door, and by allowing it to remain broken for an unreasonable length of time.

At the trial of this action, the jury found for the plaintiff. It indicated on the verdict sheet that defendant was negligent in failing to keep the premises in reasonably safe condition and that this negligence was a substantial factor in causing plaintiff's injuries. The jury awarded plaintiff $70,000 for past pain and suffering, $10,000 for past medical expenses, $500,000 for future pain and suffering and $420,000 for future medical expenses.

Defendant moved pursuant to CPLR 4404 (a) to set aside the verdict. In its August 29, 1997 order, the IAS Court granted defendant's motion finding that "plaintiff failed to produce evidence from which the jury could determine that her attacker entered through the front entrance and was not an invitee." The court also denied plaintiff's cross motion to amend the pleadings to conform to the trial proof on future psychiatric expenses, stating that such amendment would prejudice defendant. However, it ordered a new trial "in the interests of justice to determine liability and damages." The court did not address defendant's numerous claims of trial errors.

Plaintiff moved for reargument and defendant cross-moved for dismissal of the complaint. The court denied the motion to reargue and granted the cross motion to dismiss the complaint.[1]

On appeal, plaintiff argues that the IAS Court erred in setting aside the jury verdict and dismissing the complaint. We agree. A court may set aside a jury verdict and grant judgment as a matter of law to the losing party only where "there is simply no valid line of reasoning and permissible inferences which could possibly lead rational [persons] to the conclusion reached by the jury on the basis of the evidence presented at trial" (*Cohen v Hallmark Cards*, 45 NY2d 493, 499).

The IAS Court's determination that plaintiff failed to prove the element of proximate cause was error. In setting aside the verdict because plaintiff "failed to establish" that her attacker

---

1. Plaintiff also cross-moved for a determination of the alleged trial errors raised by defendant in its initial motion to set aside the verdict. Although the IAS Court properly denied the cross motion as procedurally improper (CPLR 4406), those issues are properly before this Court on plaintiff's appeal from the final judgment (CPLR 5501 [a] [1]).

entered through the front door and was not a building invitee, the court was holding plaintiff to an improperly elevated standard of proof. In a negligence action, a plaintiff must establish by a preponderance of the evidence that the defendant's negligence was the proximate cause of plaintiff's injuries. "A plaintiff is not required to exclude every other possible cause, but need only offer evidence from which proximate cause may be reasonably inferred [citations omitted]. Plaintiff's burden of proof on this issue is satisfied if the possibility of another explanation for the event is sufficiently remote or technical 'to enable the jury to reach its verdict based not upon speculation, but upon the logical inferences to be drawn from the evidence' [citations omitted]." (*Burgos v Aqueduct Realty Corp.*, 92 NY2d 544, 550.)

To recover in premises security cases where the defect alleged is a negligently maintained entrance, the plaintiff must show that the assailant was an intruder (*Burgos v Aqueduct Realty Corp.*, *supra*, at 550-551; *Price v New York City Hous. Auth.*, 92 NY2d 553, 558). However, a "plaintiff need not conclusively prove that the assailant was an intruder" (*Carmen P. v PS&S Realty Corp.*, 259 AD2d 386, 388). Rather, a plaintiff can satisfy the proximate cause burden at trial "if the evidence renders it more likely or more reasonable than not that the assailant was an intruder who gained access to the premises through a negligently maintained entrance" (*Burgos v Aqueduct Realty Corp.*, *supra*, at 551).

Plaintiff submitted evidence from which the jury could conclude that the defective front door was a recurring problem that had not been rectified (*see, Carmen P. v PS&S Realty Corp.*, *supra*; *Travieso v 3908 Bronx Blvd. Corp.*, 259 AD2d 276). Plaintiff, another tenant and the part-time building janitor testified that the front door frequently did not close properly, and that anyone could enter without using a key by simply pushing the door open. On several occasions, plaintiff and the janitor observed defendant's principal, Ms. Dragon, attempting to fix the door by either oiling the door lock or using a screwdriver. There was further evidence that the buzzer system was broken, and that a sign had been posted in the lobby advising tenants to contact defendant or the janitor if the door was not closing properly. Dragon's denials concerning this testimony merely raised credibility issues which were within the jury's province to resolve (*see, Darmetta v Ginsburg*, 256 AD2d 498).

Plaintiff also made a compelling showing that the broken front door was the only feasible means of entry into the build-

ing on the date of the attack. The only other access was a roof door. The janitor testified that the roof door was always kept locked with three separate locks, and he checked them daily. In addition, he specifically stated that he checked the roof door at 6:00 P.M. on the day of the attack, and during the next afternoon, and that it was properly locked and secured. Further, the janitor testified that none of the windows near the roof door or front door were damaged, and the lowest fire escape was 15 to 20 feet off the ground. Plaintiff thus established that it was extraordinarily unlikely that the assailant entered the building by some manner other than the unsecured front door (*cf., Rojas v Lynn*, 218 AD2d 611, *lv denied* 87 NY2d 804).

Moreover, plaintiff observed the assailant during the attack and subsequently identified him to the police. He was not a tenant and she had never seen him in the building before. A strong inference, therefore, existed that the assailant was an intruder, rather than a guest or invitee (*see, Burgos v Aqueduct Realty Corp.*, supra, at 552). The only theory defendant offered was that the assailant was admitted into the building by another tenant, Rizwan. However, as defendant concedes, Rizwan was the victim of an assault by the same assailant two days before the attack upon plaintiff, and Rizwan also identified him to the police. To suggest that Rizwan invited his attacker into his residence borders on the absurd, and no admissible evidence was offered to support this claim. Thus, there was a clear, if not compelling, line of reasoning from which the jury could conclude that the assailant was an intruder who gained entrance to building through the unsecured front door. Proximate cause was proven by a preponderance of the evidence (*supra*).

We reach the same conclusion with respect to foreseeability, an issue not ruled upon by the IAS Court. Landlords have a common-law duty to take minimal precautions to protect tenants and visitors from foreseeable criminal activity by third parties (*Burgos v Aqueduct Realty Corp.*, supra, at 548; *Jacqueline S. v City of New York*, 81 NY2d 288, 293; *Carmen P. v PS&S Realty Corp.*, supra; *Smith v New York City Hous. Auth.*, 261 AD2d 390). This duty arises when the landowner knows or has reason to know that there is a likelihood that third persons may endanger the safety of those lawfully on the premises (*Nallan v Helmsley-Spear, Inc.*, 50 NY2d 507, 519; *Cooney v Town of Oyster Bay*, 251 AD2d 364; *Maria S. v Willow Enters.*, 234 AD2d 177, 178), as where the landlord is aware of prior criminal activity on the premises (*Todorovich v Columbia Univ.*, 245 AD2d 45, 46, *lv denied* 92 NY2d 805).

In this case, plaintiff adduced sufficient evidence of prior criminal activity at the building to establish the element of foreseeability (*see, Luisa R. v City of New York*, 253 AD2d 196; *Rios v Jackson Assocs.*, 259 AD2d 608, 610). The janitor testified that the door to apartment 1-A had been broken down prior to the attack on the plaintiff, and Dragon was aware of this. He further stated that on several occasions he was forced to remove numerous "dangerous" non-tenants who habitually congregated in the hallways of the building (*Carmen P. v PS&S Realty Corp., supra*). There was further evidence that the former tenant of plaintiff's apartment was a prostitute, and that the presence of non-tenants in the hallways was related to the prostitute's business. Another tenant testified that her apartment had been broken into on two separate occasions. Plaintiff also called former Police Commissioner Benjamin Ward as an expert witness. While relying on statistics not specifically related to defendant's building, he testified that the area where the building was located was a "high crime precinct."

Significantly, there is also direct evidence that Dragon knew of the security problem at the building. For example, she was aware of the prostitute's presence, and had commenced proceedings to evict her. According to plaintiff and the janitor, Dragon made unsuccessful attempts to repair the broken door. She also admitted having called a locksmith on a number of occasions. Additionally, plaintiff testified that Dragon told her that "there had been robberies and burglaries in the building due to undesirables". Together, the evidence of prior criminal activity and Dragon's awareness of the security problems in the building was sufficient for a rational jury to conclude that defendant's negligence in failing to repair the broken door rendered a criminal intrusion onto the premises highly foreseeable (*Jacqueline S. v City of New York, supra*).

Defendant argues that if this Court reinstates the jury's verdict, a new trial should be ordered on liability and damages because of numerous errors. Defendant claims that the first interrogatory on the verdict sheet was prejudicial to it because it *assumed* that defendant's premises were not in a reasonably safe condition, and precluded the jury from concluding otherwise. The first interrogatory read: "Was the defendant, Prince Apartments, Inc., negligent in failing to maintain the premises in a reasonably safe condition?" However, in its charge, the court instructed the jury that "[y]ou must first consider whether the premises [were] reasonably safe * * * [and] [i]f you decide that the premises were reasonably safe, you will find for the Defendant and proceed no further." To

determine the propriety of a verdict sheet, "the interrogatories must be examined in the context of the court's charge [citations omitted]" (*Booth v J.C. Penney Co.*, 169 AD2d 663, 664). Since the court's charge in the present case emphasized that the jury must make the threshold determination of whether the premises were reasonably safe, defendant's claim is rejected.

Defendant is now arguing that it is entitled to apportionment of liability under CPLR article 16 with the non-party assailant intentional tortfeasor. However, defendant earlier abandoned this defense. It had obtained permission to amend the answer to include apportionment, but never raised it during the charge conference and never made an exception to the charge on that ground. In any event, apportionment with non-party intentional tortfeasors is not available (*see, Pantages v L.G. Airport Hotel Assocs.*, 187 AD2d 273; *but see, Siler v 146 Montague Assocs.*, 228 AD2d 33 [2d Dept 1997], *appeal dismissed* 90 NY2d 927).

Defendant also argues that it should have been allowed to cross-examine plaintiff on her deposition testimony that the assailant told her he had come to the building to see a "friend". The IAS Court properly refused to allow this as the statement was clearly hearsay, and defendant has not shown that any exception to the hearsay rule would justify its admission. Moreover, the assailant's self-serving explanation for his presence in the building cannot be considered as reliable evidence of anything. Similarly, an instruction on plaintiff's alleged comparative negligence, premised on Rizwan's alleged hearsay statement to Dragon that plaintiff initiated the confrontation with the assailant, was unwarranted. Manifestly, there was no rational view of the evidence that plaintiff was negligent or contributed to the assault upon her (*see, Nallan v Helmsley-Spear, Inc., supra,* at 516-517; *Willis v Young Men's Christian Assn.*, 28 NY2d 375, 377-378).

Defendant also asserts that it was error for the trial court to grant plaintiff's request for a missing witness charge as to defendant's psychiatrist. Although the psychiatrist examined plaintiff and prepared a report, the report was never disclosed and he was not called as a witness by defendant. Defendant sought permission to call two witnesses to demonstrate the psychiatrist's unavailability; however, plaintiff's counsel informed the court that he had reached the witness by telephone just prior to trial. Since defendant apparently waited until the eve of trial to subpoena the psychiatrist, its vague assertions that the psychiatrist was traveling in Russia were

insufficient to show that "the witness' whereabouts are unknown and that diligent efforts to locate him have been unsuccessful" (*People v Gonzalez*, 68 NY2d 424, 428; *Jordan v Donat*, 255 AD2d 242). Were we to conclude that the charge was inappropriate, we would find the error not so prejudicial as to warrant a new trial (*see, Cohen v Simmons*, 240 AD2d 191, 192).

The jury's award of $500,000 for future pain and suffering does not deviate materially from what is reasonable compensation under the circumstances. Plaintiff was savagely beaten during the assault. She was punched in the head, knocked down the stairs, stomped on and slashed with a razor blade. She missed five weeks of work. Her injuries included facial scarring, severe pain in her neck, left shoulder and left arm, swelling in her right thumb and recurring headaches. Plaintiff was required to take various pain medications, and she curtailed many of her daily activities such as making meals for herself, shopping, doing laundry and housecleaning. Plaintiff also sustained psychological injuries. Two psychiatrists testified that plaintiff suffered from post-traumatic stress disorder, characterized by nightmares, insomnia, panic and anxiety, fear of physical intimacy and of men in general and continuing bouts of depression. Plaintiff's medical and psychiatric witnesses each testified that plaintiff's condition was causally related to the assault, and that the injuries were permanent in nature.

In view of the brutal nature of this attack, and the documented injuries suffered by plaintiff, the award for future pain and suffering, based on a 32-year life expectancy, was reasonable compensation (CPLR 5501 [c]).

However, the jury's award of $420,000 for future medical expenses was not supported by the evidence. During his summation, plaintiff's counsel asked the jury to award $61,000 for necessary monthly psychiatric treatment. He reached this figure by multiplying the treating psychiatrist's rate of $175 per session by the number of months plaintiff would receive treatment based on her 32-year life expectancy. Notably, plaintiff's counsel explicitly declined the psychiatrist's own recommendation for more frequent visits,[2] which would have cost $142,000 calculated at the same $175 rate.

After the verdict, plaintiff cross-moved to amend the pleadings to conform to the proof. The court denied the motion stat-

---

2. Plaintiff's treating psychiatrist recommended that plaintiff be treated once a week for 5 or 10 years, twice a month for the next 1 or 2 years and once a month for the remainder of her life.

ing that defendant would be prejudiced by the delay because of the increased amount of psychiatric expenses. In light of the specific request in plaintiff's summation, we conclude that the motion was properly denied and the award cannot stand. Based on the rate of $175 suggested by plaintiff's counsel, an award of $420,000 would equal 2,400 treatment sessions. Even if plaintiff received treatment once a week, rather than once a month as requested by her counsel, that number of sessions would extend for 46 years, or 14 years beyond plaintiff's 32-year life expectancy. There is no basis in the evidence for this amount, especially as plaintiff's psychiatric treatment was decreasing in frequency prior to trial. Accordingly, the award for future medical expenses must be set aside (CPLR 4404 [a]). We direct a new trial as to future medical expenses unless plaintiff stipulates to a reduced award of $61,000 for that item.

We also agree with defendant that a collateral source hearing under CPLR 4545 (c) is required with respect to past and future psychiatric expenses. At trial, plaintiff conceded that during the pendency of this action, apparently in 1996, her health insurance plan was modified to cover 30 visits a year for psychiatric treatment with a $10 co-payment. Under CPLR 4545 (c), if the court finds that any portion of a personal injury award for economic loss "was or will, with reasonably certainty, be replaced or indemnified from any collateral source, it shall reduce the amount of the award by such finding." As it is unclear from the evidence exactly when plaintiff's health insurance began covering such visits, a hearing is required to determine the amount of the collateral source set-off for past and future psychiatric expenses.

The parties' remaining contentions for affirmative relief have been considered and are without merit. Concur—Rosenberger, J. P., Tom, Mazzarelli and Saxe, JJ.