[729 NYS2d 460]

JOSEPHINE CHIANESE, Respondent, v WERNER MEIER et al., Appellants.

First Department, August 2, 2001

**APPEARANCES OF COUNSEL**

*Steve S. Efron* of counsel (*Madeline Lee Bryer, P. C.,* attorney), for respondent.

*Caryn L. Lilling* of counsel (*Kenneth Mauro* on the brief; *Mauro Goldberg & Lilling, L. L. P.,* and *Brody, Fabiani & Cohen,* attorneys), for appellants.

**OPINION OF THE COURT**

SAXE, J.

In this personal injury action alleging inadequate building security, the trial court permitted the jury to apportion liability between the building's owner and managing agent, and the plaintiff's assailant, who had been apprehended but was not named as a party to this action. However, after the jury apportioned 50% of the liability against the non-party assailant, the trial court granted plaintiff's CPLR 4404 (a) motion to set aside the apportionment, based upon the ground that apportionment was not permitted under CPLR article 16 where defendant's liability arose by reason of a non-delegable duty (CPLR 1602 [2] [iv]). Plaintiff was awarded a judgment against the building owner and managing agent in the full amount of the damages as found by the jury, $1,100,000. On appeal, we uphold the determination setting aside the apportionment, but on different grounds.

*Facts*

Plaintiff Josephine Chianese, a 60-year-old teacher of handicapped children, was brutally attacked on May 14, 1992 while entering her third-floor apartment in Greenwich Village. When she left the building that morning, between 7:30 and 8:00 A.M., plaintiff noticed that the inner self-closing, self-locking security door of the first floor vestibule had been propped wide open with a kick-down doorstop that the building superintendent, Rudy Durakovic, had affixed years earlier. The front double doors were also wide open. Between 8:00 and 8:15 A.M. that morning, another tenant, upon leaving the building, observed the open security door, and closed it behind her.

When plaintiff returned from work at 3:00 P.M., the front and security doors were in the same wide-open condition as when she had left that morning. She walked to the third floor and observed a young man, later identified as Eugene Adger, on the staircase leading down from the fourth floor. As she entered her apartment and turned to close the door, Adger pushed her in, grabbed her around the throat and dragged her into the bedroom. There, Adger threw plaintiff face down on the bed and placed his knee, backed by his full body weight, into the small of her back, causing her to experience excruciating pain. He removed her jewelry and tied her hands behind her, continuing to choke her until he left the room to rummage through the apartment. Plaintiff then freed herself and screamed for a neighbor, causing Adger to flee. Soon after, the neighbor arrived, followed by a patrolman and an ambulance. The entire incident took 15 minutes.

According to the testimony of other tenants, the superintendent's wife, who also functioned as a superintendent because her husband had another job elsewhere, repeatedly propped open the security door and left it unattended. The superintendent himself would also leave the security door open when he went back and forth between defendants' adjoining buildings, or when the lobby floor was being cleaned.

Plaintiff testified that she had repeatedly complained to the Durakovics about the unattended open security door. She had also tried to contact the building management about this problem, calling them repeatedly and leaving messages, but received no return calls. Other tenants testified that they, too, spoke to Durakovic once or twice about the problem. Indeed, Randy Glick, president of the managing agent, acknowledged that he was aware of complaints concerning the open "vestibule"* door prior to May 14, 1992, and also acknowledged that if the door was left open, "there's certainly no security at that point in time."

Adger was charged in a five-count indictment with raping three women and entering two other victims' apartments unlawfully, one of the latter incidents involving a Hispanic male and the other involving plaintiff. The People's Voluntary Disclosure Form, admitted in evidence without objection, contained Adger's statement made May 28, 1992, that:

> "I entered the building. The lobby door was open. I
> saw the white woman. I grabbed her behind by the
> mouth and pushed her into the apartment."

According to Harold Smith, plaintiff's security expert, a security door should never be propped open because that would serve as a signal to anyone passing by "that there is no access control in this building." According to Francis Murphy, defendants' security expert, a doorstop was preferable to using a makeshift device, such as a cinder block or piece of wood, which might damage the frame, to hold the door open when needed. In and of itself, it did not create any type of dangerous condition, although propping the security door open and leaving it unattended would be a security risk.

Smith also testified that the building in question and its adjoining buildings, which defendants also owned and managed, constituted a "high crime location" in light of one prior

---

* Given his recognition that the open door resulted in a lack of security, it is reasonable to conclude that Glick's reference to the "vestibule" door referred to the self-locking inner door rather than the unlocked outer doors.

knifepoint robbery of a tenant as he entered a building and seven burglaries within the two years before the subject incident.

While the jury found that the installation of the doorstop on the security door did not prevent it from operating in a reasonably safe manner, it found that Adger gained entry to the premises through a "negligently maintained entrance" which was a substantial factor in causing plaintiff's injuries. While it also found that defendants did not act intentionally or with reckless disregard for her safety, it awarded plaintiff $400,000 for past and $700,000 for future (17.4 years) pain and suffering, finding Adger and defendants each 50% liable.

*Discussion*

■ Initially, we reject defendants' claim that reversal is warranted based upon the evidence before the jury or the court's rulings.

The jury's finding of proximate cause is supported by the evidence that the building's self-locking front door, designed to provide security against intruders, was frequently left propped open; that when plaintiff returned home from work shortly before the attack, she observed that the door was again propped open, and that the assailant, who was not a building tenant, was in the staircase near her apartment (*cf.*, *Burgos v Aqueduct Realty Corp.*, 92 NY2d 544, 551-552; *Brewster v Prince Apts.*, 264 AD2d 611, 613, *lv denied* 94 NY2d 762, *lv dismissed* 94 NY2d 875); and that the assailant had made statements, one reflected in the voluntary disclosure form served in the context of the criminal prosecution, another in tape-recorded conversations with plaintiff's investigator, that he entered the building through the open front door. The tapes were properly admitted upon the investigator's foundation testimony establishing that they were genuine and had not been tampered with (*see*, *People v Ely*, 68 NY2d 520, 527). This Court's decisions on prior appeals, one reversing a grant of summary judgment which had been based largely on the assailant's statements to plaintiff's investigator (246 AD2d 328, *lv dismissed* 92 NY2d 876), and the other dismissing an action by plaintiff against defendant's attorney under Judiciary Law § 487 on the ground that no weight could be given to the assailant's contradictory statements as to how he gained entry to the building (*Chianese v Fabiani*, 269 AD2d 141), may not be relied upon to establish that the assailant's statements were incredible as a matter of law, or to otherwise preclude their use at the trial of this action. There was also ample evidence that defendants, both directly and through their agent Durakovic, had notice

that the door was frequently left open, and foreseeability was established by the evidence of one assault and seven burglaries in the building or the adjoining buildings also owned by defendant within the two-year period immediately preceding the attack (*see, Splawn v Lextaj Corp.*, 197 AD2d 479).

The alleged errors regarding evidence relating to the doorstop do not warrant reversal, particularly since the jury did not base liability on its having been affixed to the door. As to the contention that the court erred in its instruction to the jury regarding the effect of any apportionment, since no objection was made on the record it is unpreserved, and review in the interest of justice is not warranted.

■ As to defendants' contention that Dr. Head should have been allowed to testify as an expert with respect to Post Traumatic Stress Disorder (PTSD) and crime victims, any error in this regard was harmless in that the record reflects that Dr. Head testified fully concerning PTSD generally and plaintiff's injuries in particular, and advised the jury that there exists no sub-specialty for crime victims suffering from that disorder.

■ The court erred in refusing to admit into evidence Adger's 1996 affidavit in which he stated that he gained entry by pressing the intercom until a tenant buzzed him in, on the ground that defendants failed to identify their foundation witnesses in advance of trial. Where a document on its face is properly subscribed and bears the acknowledgment of a notary public, there is a "presumption of due execution, which may be rebutted only upon a showing of clear and convincing evidence to the contrary" (*Spilky v Bernard H. La Lone, Jr., P. C.*, 227 AD2d 741, 743). Moreover, while defendants' foundation witnesses were not on the witness list, plaintiff was at all times aware of the affidavit and the witnesses were testifying as to the foundation, not the truth thereof, such that the sanction of precluding the affidavit was excessive and the affidavit should have been admitted. However, the right to a fair trial does not guarantee a perfect trial (*see, People v Rivera*, 39 NY2d 519, 523), and this error was not so prejudicial as to warrant a new trial.

*Article 16 Apportionment*

■ We agree with our dissenting colleague that the recent opinion of the Court of Appeals in *Rangolan v County of Nassau* (96 NY2d 42) requires the rejection of plaintiff's contention that the landlord's non-delegable duty precludes apportionment of liability for plaintiff's non-economic damages under CPLR article 16. "[N]othing in CPLR 1602 (2) (iv) precludes a

municipality, landowner or employer from seeking apportionment between itself and other tortfeasors 'for whose liability [it] is not answerable' [citation omitted]" (*id.* at 47). Thus, the trial court's reliance on that subdivision to support the granting of plaintiff's CPLR 4404 (a) motion and setting aside the jury's apportionment of liability was in error.

However, here plaintiff specifically pleaded the exception to apportionment provided in CPLR 1602 (5), which excepts from the application of CPLR article 16 "actions requiring proof of intent." Since this particular exemption was neither raised by the parties nor considered by the Court in *Rangolan*, we cannot assume that the Court of Appeals by implication rejected its application in circumstances such as these. Where a question is certified to the Court of Appeals, the scope of that Court's review is normally limited to determining the issue of law certified to it (*see, Solicitor for Affairs of His Majesty's Treasury v Bankers Trust Co.*, 304 NY 282, 290, citing *Matter of McDonald*, 211 NY 272, 276; *Gregoire v G. P. Putnam's Sons*, 298 NY 119, 125; Cohen and Karger, Powers of the New York Court of Appeals § 86, at 363 [rev ed 1952]). Moreover, since the plaintiff in *Rangolan* did *not* plead the exemption under CPLR 1602 (5), the Court's rulings in *Morales v County of Nassau* (94 NY2d 218) and *Cole v Mandell Food Stores* (93 NY2d 34) would have precluded the Court from applying that particular exemption in *Rangolan* (*supra*). That the *Rangolan* Court answered in the affirmative the question of whether the allegedly negligent tortfeasor could, under CPLR 1601, seek apportionment of its liability with the intentional tortfeasor, therefore does not answer the question of whether a plaintiff who then properly pleads an exemption under CPLR 1602 (5) is entitled to the application of that subdivision.

We hold that when the exemption is properly pleaded, under circumstances such as these, the claim for apportionment of liability made by the named defendant must be rejected. Accordingly, we affirm, on that ground, the ruling of the trial court setting aside the apportionment and holding defendant liable for the full amount of plaintiff's damages.

This Court has previously held that apportionment of liability under CPLR article 16 is not available with non-party intentional tortfeasors (*see, Brewster v Prince Apts.*, 264 AD2d 611; *Pantages v L.G. Airport Hotel Assocs.*, 187 AD2d 273; *but see, Siler v 146 Montague Assocs.*, 228 AD2d 33 [2d Dept], *appeal dismissed* 90 NY2d 927). For the reasons that follow we adhere to our prior rulings.

When interpreting a statute, we must determine and effectuate the will of the Legislature (*see, Chase Scientific Research v NIA Group,* 96 NY2d 20). To do so here, we must consider the Legislature's impetus and intent in enacting CPLR article 16, as well as its purpose in adopting a series of exceptions or exemptions to its application (*see,* CPLR 1602 [3]-[11]). The Legislature's primary impetus in enacting article 16 was the *"liability insurance crisis"* caused as a result of public entities such as municipalities being held liable for large verdicts where their culpability was minor (*see, Rangolan, supra,* at 46, citing *Insuring Our Future,* Report of Governor's Advisory Commn on Liability Ins [Apr. 7, 1986]). The article's general purpose was "to remedy the inequities created by joint and several liability on low-fault, 'deep pocket' defendants" (*see, Rangolan, supra,* at 46). But, in enacting a series of exemptions from apportionment, the Legislature also sought to ensure for a variety of plaintiffs the continued protection of the common-law rule of joint and several liability, preserving their right to seek a full recovery for their damages from whichever tortfeasors they chose.

Importantly, since article 16 is in derogation of the common law, it must be strictly construed, "to the end that the common law system be changed only so far as required by the words of the act and the mischief to be remedied" (McKinney's Cons Laws of NY, Book 1, Statutes § 301 [a], at 460; *see, Oden v Chemung County Indus. Dev. Agency,* 87 NY2d 81, 86). Conversely, the exceptions set forth in CPLR 1602 should be construed broadly, so as to preserve the common-law rule of joint and several liability where it is not clearly eliminated by the statute.

Defendants suggest that subdivision (5) was only intended to exempt from apportionment actions alleging intentional torts. However, a careful reading of section 1602 does not support that view. First, in analyzing subdivision (5) of section 1602, it is noteworthy that the plain language of the statute speaks of "actions requiring proof of intent," *not* "actions requiring proof of *defendant's* intent." In a premises security case such as this, to establish that the landlord's negligence was a proximate cause of the assault, the plaintiff must prove the fact of the assault, an intentional act. Accordingly, such actions are best viewed as falling within the category of "actions requiring proof of intent," and, as a result, within the exemption of subdivision (5).

Secondly, a separate subdivision of section 1602 specifically applies to cases involving multiple concurrent intentional tort-

feasors, exempting from a right to apportionment "any parties found to have acted knowingly or intentionally, and in concert." (CPLR 1602 [11].) Therefore, the reference in subdivision (5) to "actions requiring proof of intent" clearly does not refer to actions involving concurrent multiple intentional tortfeasors. If we were to construe subdivision (5) as applicable only to actions for intentional torts, the only other possible purpose for subdivision (5) would be to prevent a named intentional tortfeasor from seeking to apportion some liability to an allegedly negligent tortfeasor, or to a prior or subsequent intentional tortfeasor. If the Legislature had intended subdivision (5) to only apply to intentional tortfeasors seeking to apportion some liability to an allegedly negligent tortfeasor or to a prior or subsequent intentional tortfeasor, it is inconceivable that it would have employed language as broad as "actions requiring proof of intent," when it simply could have written the exemption from apportionment as it did in subdivision (11), to apply to "any parties found to have acted knowingly or intentionally."

Therefore, we conclude that the exemption from apportionment of liability created by CPLR 1602 (5) applies to premises security cases such as this, and apportionment under CPLR article 16 is not available as against the non-party intentional tortfeasor. Consequently, the order setting aside the jury's apportionment must be affirmed.

Finally, upon our review of the evidence we find that the awards of damages were not excessive.

Accordingly, the judgment of the Supreme Court, New York County (Emily Goodman, J.) entered February 2, 2000, which, upon a jury verdict and the grant of plaintiff's CPLR 4404 (a) motion to set aside the 50% apportionment of liability assessed against the non-party assailant, found defendants liable and awarded plaintiff damages in the amount of $1,100,000, should be affirmed, without costs.

RUBIN, J. (dissenting in part). While I agree that the errors complained of by defendants, to the extent preserved for our review, are not so prejudicial as to warrant a new trial, I do not concur with the majority's disposition of the apportionment issue. At the outset, plaintiff did not give defendants notice that she intended to rely on the so-called non-delegable duty exemption to CPLR article 16, and it is therefore unnecessary to reach the issue. To the extent that the lack of notice is deemed harmless, contrary to case law, the Court is in agreement that the Court of Appeals opinion in *Rangolan v County of Nassau* (96 NY2d 42) resolved any doubt that the breach of

a non-delegable duty is not a statutory exemption from apportionment for "non-economic loss" (CPLR 1601). The point of contention is whether or not CPLR article 16 affords an exemption for the intentional acts of non-party tortfeasors.

To review the pertinent facts, plaintiff seeks damages for injuries sustained in the course of a robbery committed in the apartment building where she resided. It is alleged that defendants Werner Meier and Mautner-Glick Corporation—respectively, the owner of the building and its managing agent—failed to take minimal measures to protect the safety of the residents. Specifically, it is charged that defendants' superintendent propped open the doors leading into the lobby, thus allowing the assailant to gain entry to the premises. Eugene Adger was apprehended by police and confessed to this and similar crimes committed in Greenwich Village in late April and May of 1992.

The jury awarded plaintiff $400,000 for past pain and suffering and $700,000 for future pain and suffering, apportioning liability equally to defendants and to the non-party assailant, Adger. Upon plaintiff's post-trial motion pursuant to CPLR 4404 (a), Supreme Court set aside the apportionment against the assailant on the grounds that defendants breached a non-delegable duty to take minimal safety precautions. The court held that CPLR 1602 (2) (iv) renders article 16 inapplicable to actions involving the breach of a non-delegable duty.

As noted in *Roseboro v New York City Tr. Auth.* (286 AD2d 222 [decided herewith]), a plaintiff who invokes an exception to apportionment under CPLR article 16 is required to give the defendant notice of the particular exception relied upon by way of amendment to the pleadings (*Cole v Mandell Food Stores*, 93 NY2d 34, 39). Although plaintiff's amended verified complaint recites that this matter is subject to the exclusions contained in CPLR 1602 (5), (7) and (11), the pleadings were never amended to give defendants notice that plaintiff intended to assert that defendants' breach of a non-delegable duty constitutes an exception to apportionment of non-economic injuries (CPLR 1602 [2] [iv]). Therefore, this matter is indistinguishable from *Morales v County of Nassau* (94 NY2d 218, 223-224), and plaintiff was barred from raising the exception for the first time in her post-trial motion to set aside the apportionment against Eugene Adger (CPLR 4404 [a]).

The merits of the non-delegable duty issue, were they to be reached, are governed by the Court of Appeals decision in

*Rangolan v County of Nassau (supra)*, which is entirely dispositive. In answer to a certified question by the Second Circuit Court of Appeals, the Court held that there is no nondelegable duty exception to apportionment of non-economic injury under article 16, noting (at 48) that "municipalities, landowners and employers, who often owe a non-delegable duty or are vicariously liable for their agents' actions * * * are precisely the entities that article 16 was designed to protect." Engrafting an additional basis for exemption, even on public policy grounds, would upset the "careful balance struck by the Legislature" in drafting CPLR article 16 (*Morales, supra*, at 225).

As to the sufficiency of the evidence that defendants violated their duty to provide minimal safety measures, the incidence of criminal activity in the buildings owned and managed by defendants in the previous two years—seven burglaries and the knifepoint robbery of a tenant as he entered a building—is sufficient to give defendants notice that criminal activity was foreseeable (*Jacqueline S. v City of New York*, 81 NY2d 288, 294-295 [exact location and type of crime not material to issue of foreseeability]).

The proposition sought to be tested on this appeal is that a defendant charged with negligence that precipitates or facilitates an act of violence cannot obtain the benefit of CPLR article 16 to apportion non-economic damages against a nonparty intentional tortfeasor. No such exemption is provided in the statute, and nothing in the Court of Appeals decisions suggests a proclivity to uphold an exemption by implication. To the contrary, the Court has applied the maxim *"expressio unius est exclusio alterius"* to preclude any basis for exemption not expressly stated by the Legislature (*Morales, supra*, at 224). The exclusion for "actions requiring proof of intent" does not, on its face, apply to the facts of this matter, in which plaintiff asserted only negligence as the basis for the landlord's liability. It would require a significant expansion of the statute to encompass acts of intentional tortfeasors who are not parties to the action and whose conduct is not asserted as a basis for relief.

Nor would CPLR 1602 (11) be rendered surplusage by restricting CPLR 1602 (5) to bar apportionment by intentional tortfeasors against negligent tortfeasors, as the majority suggests. CPLR 1602 (11) extends exclusion to "parties found to have acted knowingly *or* intentionally, *and in concert*, to cause the acts or failures upon which liability is based"

(emphasis added). This provision, on its face, applies to actions taken in concert, whether undertaken intentionally or merely knowingly, and is not duplicative of CPLR 1602 (5) as it applies to parties to the action.

That strict construction is to be accorded to exemptions under article 16 is demonstrated by *Morales v County of Nassau* (94 NY2d 218, *supra*), in which the trial court had precluded application of article 16 on the ground that the public policy of encouraging strict enforcement of orders of protection in domestic violence cases supersedes application of the statute. The Court of Appeals, however, declined (at 224) "to create an entirely new exemption that is not suggested by the language of the statute or its history." The Court noted, with approval, the Second Department's remark that "the County's negligence stood 'in stark contrast to the act of intentional and criminal violence committed by [the nonparty assailant]' " (*supra*, at 222). The Court concluded that the legislation reflected "a painstaking balance of interests" including "the burdens to be imposed on innocent plaintiffs as well as a concern that defendants at fault to a small degree were consistently paying a disproportionate share of damages awards, adversely affecting the availability and affordability of liability insurance" (*supra*, at 224-225).

If a rule against article 16 apportionment for acts of nonparty assailants were going to be applied, it would have found obvious application under the facts of *Rangolan v County of Nassau* (96 NY2d 42, *supra*), in which the United States District Court for the Eastern District of New York granted judgment to the plaintiff as a matter of law (217 F3d 77, 79). In *Rangolan*, the County knew that an informant had given testimony against one Steven King. Rangolan's records contained a warning to segregate him from King, yet the two inmates were placed in the same dormitory, with the result that King assaulted Rangolan. Thus, the defendant had express knowledge of the threat posed to the plaintiff by King. Furthermore, not only did the County have a duty to safeguard the welfare of plaintiff Rangolan upon its premises, the County also had virtually absolute supervisory control over his assailant. Under similar circumstances, where the premises, the plaintiff and the instrumentality causing injury were all under the defendant's control, liability has been imposed under the doctrine of res ipsa loquitur (*Morris v Lenox Hill Hosp.*, 232 AD2d 184, *affd* 90 NY2d 953 *for reasons stated below*).

In *Rangolan* (*supra*), the New York Court of Appeals answered a certified question, holding that CPLR 1602 (2) (iv)

does not create a non-delegable duty exception that would preclude the County from seeking apportionment against Rangolan's assailant. While the holding rests upon a narrow ground, the certified question was rather more general. The Second Circuit Court of Appeals posited (at 46) " 'whether a tortfeasor such as the County can, in the facts and circumstances of this case, seek to apportion its liability with another tortfeasor such as King pursuant to N. Y. C.P.L.R. 1601, or whether N. Y. C.P.L.R. 1602 (2) (iv) precludes such a defendant from seeking apportionment' " (quoting 217 F3d, *supra*, at 81).

That a rule must be interpreted within the context of its expression is a settled principle of judicial construction. As the Court stated in *Matter of Staber v Fidler* (65 NY2d 529, 535, quoting *Dougherty v. Equitable Life Assur. Socy.*, 266 NY 71, 88), " 'No opinion is an authority beyond the point actually decided, and no judge can write freely if every sentence is to be taken as a rule of law separate from its association.' " However, given the broad phrasing of the certified question, it seems highly unlikely that the Court of Appeals would have misled the Second Circuit Court of Appeals by restricting its discussion to the non-delegable duty issue if the statute otherwise provided a blanket exemption against apportionment for the acts of non-party tortfeasors under the rubric of CPLR 1602 (5). It is noteworthy that the Court of Appeals summarized its response to the certified question at the start of the opinion, stating (at 46): "We answer the first part of the question in the affirmative, and thus *[sic]* the second part in the negative." While the Court took the opportunity to address the asserted statutory exemption specifically raised by the certified question in *Rangolan*, its introductory remarks indicate that it considered apportionment to be available "in the facts and circumstances of this case" (*id.*), and not merely under CPLR 1602 (2) (iv).

To be amenable to apportionment under article 16, a defendant must be no more than 50% liable for a plaintiff's total liability (CPLR 1601 [1]). In *Rangolan*, the only other tortfeasor is the assailant, King. By ruling that apportionment is available under the circumstances presented, the Court of Appeals necessarily found that King might be held liable for the major portion of the injured plaintiff's damages. The Court also implicitly found that no provision of article 16 operates to bar apportionment with the non-party intentional tortfeasor and, were the issue to be raised anew by the plaintiff in the *Rangolan*

action, the County could avail itself of the doctrine of res judicata to preclude relitigation of the question (*see, e.g., Timberline Dev. v Kronman*, 263 AD2d 175, 178). Given the broad implications of the *Rangolan* decision, I cannot agree that this Court's decisions in *Pantages v L.G. Airport Hotel Assocs.* (187 AD2d 273) and *Brewster v Prince Apts.* (264 AD2d 611, *lv denied* 94 NY2d 762, *lv dismissed* 94 NY2d 875) remain valid authority.

Accordingly, I would reverse the judgment, deny the motion and reinstate the jury award.

MAZZARELLI, J. P. and ELLERIN J., concur with SAXE, J.; WALLACH and RUBIN, JJ., dissent in part in a separate opinion by RUBIN, J.

Judgment, Supreme Court, New York County entered February 2, 2000, affirmed, without costs.