Scurry v New York City Hous. Auth. (2021 NY Slip Op 00447)





Scurry v New York City Hous. Auth.


2021 NY Slip Op 00447


Decided on January 27, 2021


Appellate Division, Second Department


Dillon, J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on January 27, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
CHERYL E. CHAMBERS
ROBERT J. MILLER
VALERIE BRATHWAITE NELSON, JJ.


2018-07386
 (Index No. 337/09)

[*1]Bryan Scurry, et al., respondents,
v
New York City Housing Authority, appellant (and third-party actions).



APPEAL by the defendant, in an action to recover damages for personal injuries and wrongful death, etc., from an order of the Supreme Court (Bernard L. Graham, J.), dated February 23, 2018, and entered in Kings County. The order denied the defendant's motion for summary judgment dismissing the complaint.



Herzfeld & Rubin, P.C., New York, NY (Sharyn Rootenberg and Miriam Skolnik of counsel), for appellant.
The Rosato Firm, P.C. (Sullivan Papain Block McGrath & Cannavo P.C., New York, NY [Brian J. Shoot], of counsel), for respondents.



DILLON, J.P.


OPINION & ORDER
We address whether a "targeted" attack by a perpetrator against a victim on premises, as distinguished from a "random" attack on premises, is, by definition, an independent intervening cause that insulates the property owner from liability for negligent security measures, as a matter of law. There is a line of cases from the Appellate Division, First Department, holding that targeted attacks break the proximate causal link between the reasonableness of security measures by the property owner and the targeted crime itself. We respectfully disagree and hold, for reasons set forth below, that depending upon the circumstances, the issue of proximate causality may present a triable issue of fact.
I. Facts
The facts of this appeal, while tragic, are not particularly complex. During 2005 and early 2006, the decedent, Bridget Chrushshon (hereinafter the decedent), and her four sons, including the plaintiffs, Bryan Scurry and Brandon Chrushshon (hereinafter Chrushshon), resided together in a rented private house. During that time, the decedent dated, and then became engaged to, Walter D. Boney, who for a time also lived with the decedent and her sons at that location. In April 2006, the decedent and her sons moved without Boney to a sixth floor apartment at the Cypress Hill Houses, located on Euclid Avenue in Brooklyn, and owned and maintained by the defendant, New York City Housing Authority (hereinafter NYCHA). The decedent ended her relationship with Boney over his alleged excessive drinking, anger, possessive and controlling behavior, and incidents of domestic violence.
According to witness testimony at hearings pursuant to General Municipal Law § 50-h and depositions, there were instances in late 2006 and early 2007 when Boney acted in an increasingly volatile manner, committing acts of stalking, leaving angry voice mails, and making multiple threats that he would kill the decedent and himself. On two occasions, Boney appeared unexpectedly at the decedent's apartment and banged on the hallway door. In the summer of 2007, [*2]Boney made harassing phone calls to the decedent's place of employment, once attacked and choked the decedent at her workplace, and harassed the decedent's new boyfriend.
Meanwhile, according to the second supplemental bill of particulars, the street-level front door of the decedent's apartment building was not equipped with a working door lock. Each plaintiff testified that while the front door of the apartment building was equipped with a lock, it had been visibly broken for many months and that anyone could enter the building by merely pushing on the door. Indeed, Scurry testified that "[t]he pieces would hang from the door, the metal pieces, where if you pull the door, it'd just come open. The locks didn't work."
At approximately 10:25 p.m. on October 24, 2007, the decedent left her apartment to go to work. Boney confronted her in the hallway and restrained her, choked her, and doused her with a flammable liquid. Scurry, hearing his mother scream and two loud bangs, ran out to the hallway and pushed Boney off his mother. Boney ignited the flammable liquid setting himself, the decedent, Scurry, and the hallway on fire. The decedent died at the scene, Boney died several days later, and an injured Scurry was hospitalized for approximately 15 months and underwent 2 years of rehabilitation and multiple surgeries.
In 2009, Scurry on behalf of himself, and Crushshon on behalf of the decedent's estate, commenced this action against NYCHA asserting causes of action to recover damages for negligence, negligent infliction of emotional distress as to Scurry, and wrongful death. NYCHA commenced third-party actions against Boney's estate.
After discovery was completed and a note of issue was filed, NYCHA moved for summary judgment dismissing the complaint. NYCHA relied, inter alia, upon the deposition testimony of Cassandra Newkirk, its supervisor of caretakers for the premises, describing daily inspection procedures and the issuance of high priority work tickets for any necessary repairs. As more relevant to the issues on appeal, NYCHA also argued that Boney's attack upon the decedent was an independent intervening cause of her death, which broke the causal nexus between any negligence of NYCHA in failing to maintain an operable lock on the building's door. NYCHA drew a distinction between a targeted or premeditated attack, which it argued had occurred here, and a random act of violence.
The plaintiffs opposed the motion on the ground that daily inspection reports established the inoperability of the outer door for 13 days in July 2007, 16 days in August 2007, and 13 days in September 2007 without there being corresponding repair tickets. They also submitted crime statistics for the area and transcripts of witness hearing and deposition testimony that the door lock was continually broken.
In the order appealed from, the Supreme Court denied NYCHA's motion for summary judgment dismissing the complaint, concluding that there were triable issues of fact as to whether, inter alia, NYCHA fulfilled its duty to provide a safe environment given the volume of crime activity in the area, and whether the often-broken door lock could be negligence proximately related to the occurrence.
For reasons discussed below, we affirm the order appealed from.
II. Legal Analysis
Negligent security actions against property owners are not uncommon in New York. Landlords are subject to a common-law duty to take minimal precautions to protect tenants from foreseeable harm, including harm from the foreseeable criminal conduct of third persons (see Burgos v Aqueduct Realty Corp., 92 NY2d 544, 548; Jacqueline S.v City of New York, 81 NY2d 288, 293-294; Miller v State of New York, 62 NY2d 506, 513; Gentile v Town & Vil. of Harrison, N.Y., 137 AD3d 971, 972). Foreseeability and duty are not identical concepts. Foreseeability merely determines the scope of the duty once the duty is determined to exist (see Maheshwari v City of New York, 2 NY3d 288, 294; Pulka v Edelman, 40 NY2d 781, 785). Foreseeability is, of course, a crucial element for liability to attach in negligence.
A leading case on the subject of landlord liability for negligent security is Nallan v Helmsley-Spear, Inc. (50 NY2d 507), involving the shooting of the plaintiff by an unknown assailant in the public lobby of an office building in Manhattan. The plaintiff alleged that the property owner was negligent because the absence of a lobby attendant permitted the assailant to access the lobby after office hours, violating the duty of providing tenants and invitees with at least minimal protection against criminal intruders. The plaintiff also contended that the property owner was negligent for violating the common-law legal duty of providing reasonable care in making common areas of the building reasonably safe for tenants and invitees. The case is typically cited for the [*3]proposition that the status of the plaintiff upon the premises is not a determinative factor in assessing the landowner's duty of care. Secondarily, the Court of Appeals in Nallan also held that the criminal conduct of a third person, which might otherwise be an intervening cause breaking the proximate causality between the occurrence and the injury at the premises, may nevertheless expose the landowner to liability if the criminal conduct was itself foreseeable (see id. at 520).
A related case from the Court of Appeals decided shortly after Nallan further developed the circumstances under which the criminal conduct of a third person may constitute an independent intervening cause by which defendants are, or are not, liable for failing to provide plaintiffs with reasonable safety. In Derdiarian v Felix Contr. Corp. (51 NY2d 308), the Court of Appeals drew a distinction, for the purpose of foreseeability, between intervening acts that are a natural and foreseeable consequence of a circumstance created by the defendant, versus intervening acts that are extraordinary, outside the course of normal events, or independent or far removed from the landowner's conduct (see id. at 315; see also Bell v Board of Educ. of City of N.Y., 90 NY2d 944, 946; Mays v City of Middletown, 70 AD3d 900, 902). The Court of Appeals explained that liability may attach where the intervening acts were a natural and foreseeable consequence of circumstances created by the defendant, but may not attach where the intervening acts were not such a foreseeable consequence. While Derdiarian is not a premises liability case, the distinction that it drew regarding foreseeability has been applied to premises liability cases by both the Court of Appeals and the Appellate Division, Second Department, in the years that followed (see e.g. Kush v City of Buffalo, 59 NY2d 26, 32-33; Niewojt v Nikko Const. Corp., 139 AD3d 1024, 1026; Fahey v A.O. Smith Corp., 77 AD3d 612, 616; Barth v City of New York, 307 AD2d 943, 944).
"Because questions concerning what is foreseeable and what is normal may be the subject of varying inferences, as is the question of negligence itself, these issues generally are for the fact finder to resolve" (Derdiarian v Felix Contr. Corp., 51 NY2d at 315; see Santaiti v Town of Ramapo, 162 AD3d 921, 927). While foreseeability is generally an issue for the finder of fact, proximate cause may be decided as a matter of law when only one conclusion can be drawn from the facts (see Campbell v Central N.Y. Regional Transp. Auth., 7 NY3d 819, 820-821; Bell v Board of Educ. of City of N.Y., 90 NY2d at 946; Derdiarian v Felix Contr. Corp., 51 NY2d at 315-316; Eddy v John Hummel Custom Bldrs., Inc., 147 AD3d 16, 23; Ingrassia v Lividikos, 54 AD3d 721, 724).
In addressing foreseeability where plaintiffs are injured at premises as a result of the criminal acts of third parties, the First Department has distinguished between criminal acts that are intentionally "targeted" against a particular victim, and criminal acts that are "opportunistic" against random victims. Where the criminal act is targeted, the First Department deems the causal nexus between the plaintiff's injury and the landowner's duty of care to be severed as a matter of law (see Roldan v New York City Hous. Auth., 171 AD3d 418, 419 [targeted attack by assailant known to building residents]; Estate of Faughey v New 56-79 IG Assoc., L.P., 149 AD3d 418, 418-419 [murder at office building of psychiatrist by her former patient]; Flynn v Esplanade Gardens, Inc., 76 AD3d 490, 492 [attack on plaintiff in apartment by ex-girlfriend's boyfriend where the ex-girlfriend was a frequent visitor known to security guards at the lobby]; Cynthia B. v 3156 Hull Ave. Equities, Inc., 38 AD3d 360 [rapist disguised as a plumber who had been present in building on prior occasions targeted plaintiff, independent of a broken front door lock]; Flores v Dearborne Mgt., Inc., 24 AD3d 101, 101-102 [preplanned robbery, hostage-taking, and murder]; Buckeridge v Broadie, 5 AD3d 298, 300 [sophisticated armed robbers disguised as agency workers who pretargeted plaintiff's residence]; Cerda v 2962 Decatur Ave. Owners Corp., 306 AD2d 169, 169-170 [targeted preplanned murder by team of assassins]; Rivera v New York State Hous. Auth., 239 AD2d 114, 115 [preplanned murder that broke causal nexus with broken front door lock of building]; Harris v New York City Hous. Auth., 211 AD2d 616, 616-617 [targeted murder within defendant's building]). By contrast, where the criminal act is perpetrated in a random manner, the First Department deems the causal nexus between the plaintiff's injury and the landowner's duty of care as potentially raising a triable issue of fact (see Gonzalez v Riverbay Corp., 150 AD3d 535, 536 [sexual assault by perpetrator who entered building by "piggybacking" a tenant who entered at the door using a key]; Gonzalez v 231 Ocean Assoc., 131 AD3d 871, 871-872 [random intruder in defendant's building]; Foreman v B & L Props. Co., 261 AD2d 301 [sexual assault in elevator with evidence of broken front door lock]).
The rationale behind the First Department's distinction between targeted and random crimes is that, in actions involving premeditated attacks upon known victims, "it is unlikely that any [*4]reasonable security measures would have deterred" the criminal attack (Estate of Faughey v New 56-79 IG Assoc., L.P., 149 AD3d at 418-419, quoting Cerda v 2962 Decatur Ave. Owners Corp., 306 AD2d at 169).
The Second Department does not appear to have drawn the First Department's sharp distinction between targeted and random attacks in determining issues of foreseeability and proximate cause in negligent security actions against landowners. The closest our Court has come to doing so was in Harris v New York City Hous. Auth. (211 AD2d 616). There, the plaintiff's decedent was the subject of a targeted murder by a long-time enemy, who had attempted the murder on a prior occasion. Like here, the building where the crime occurred in Harris had a broken front door lock, but unlike here, the assailant had a variety of friends and acquaintances residing in the building who could have allowed him access. In Harris, our Court held that summary judgment was warranted in favor of NYCHA, on the ground that the intentional criminal conduct was an independent intervening cause that severed the causal nexus between the alleged negligence of the defendant and the plaintiff's injury and death (see id. at 617). In Harris, this Court expressly stated that "there is no evidence that the assailant's entry onto the premises was due to the failure of the NYCHA to install or maintain a lock on the front door" (id.). The facts in this action are easily distinguishable from those in Harris. Here, the decedent and her family had moved to the subject premises as the decedent's relationship with Boney had deteriorated. As a result, Boney never lived with them in that building or even visited them there, and no evidence was presented that he had friends or acquaintances who would have given him access to the interior of the building, even if there had been a working lock on the front door. Due to the clear factual differences, the result in Harris does not require the same result here.
The problem with basing a conclusion as to liability on the distinction between "targeted" and "random" attacks is that the binary dichotomy between those two categories of crime, by mechanically focusing on the perpetrator's intent, fails to account for the myriad of facts that may be present in a given case. Indeed, there may be more than one proximate cause of an occurrence or injury (see Turturro v City of New York, 28 NY3d 469, 484; Mazella v Beals, 27 NY3d 694, 706; Argentina v Emery World Wide Delivery Corp., 93 NY2d 554, 560 n 2). "A defendant's negligence qualifies as a proximate cause where it is 'a substantial cause of the events which produced the injury'" (Mazella v Beals, 27 NY3d at 706, quoting Derdiarian v Felix Contr. Corp., 51 NY2d at 315). The concept that there may be more than one proximate cause of an occurrence is so fundamental to the state's decisional authority that the concept appears using varying phraseologies and nomenclature in several hundreds of reported cases.
Equally fundamental to our decisional authority is that the party moving for summary judgment—here, NYCHA—bears the initial burden of demonstrating its prima facie entitlement to judgment as a matter of law (see Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853; Zuckerman v City of New York, 49 NY2d 557, 559; Friends of Animals v Associated Fur Mfrs., 46 NY2d 1065, 1067). Only if the movant meets that standard does the burden then shift to the party opposing summary judgment to tender evidence, in a form admissible at trial, sufficient to raise a triable issue of fact (see Alvarez v Prospect Hosp., 68 NY2d 320, 324; Zuckerman v City of New York, 49 NY2d at 562; Friends of Animals v Associated Fur Mfrs., 46 NY2d at 1068). Ultimately, the role for the court in addressing motions for summary judgment is issue finding rather than issue resolution (see Kriz v Schum, 75 NY2d 25, 33; Shabat v State of New York, 177 AD3d 1009, 1010; Miele v American Tobacco Co., 2 AD3d 799, 803-804).
In our view, for NYCHA to be entitled to summary judgment under the circumstances presented here, it needed to establish, in the first instance, that Boney's nefarious presence in the hallway at the decedent's apartment was not a result of having gained access to the building through a negligently maintained and lockless front door, but was instead a result of having been given access by a tenant or by other lawful means outside the scope of the minimal security measures that NYCHA had a duty to provide. Otherwise, the concept that an occurrence may have more than one proximate cause becomes meaningless in an action such as this. NYCHA provided no evidence in support of its motion for summary judgment dismissing the complaint that its alleged negligently maintained front door played no concurrent role in enabling Boney's criminal conduct at the specific date, time, and place of his crime, however premeditated that criminal conduct might have been.
We do not suggest that a property owner may never prevail on a motion for summary judgment where a premeditated crime was committed within the building. We acknowledge that a property owner is not an insurer of the safety of its tenants (see Nallan v Helmsley-Spear, Inc., 50 [*5]NY2d at 519). There may be any variety of actions where criminal conduct committed within a building does not render the property owner liable, such as, illustratively, where the criminal activity is committed by a fellow tenant lawfully present at the premises (cf. Burgos v Aqueduct Realty Corp., 92 NY2d at 550); where security measures at a building are shown to be reasonable, adequate, and in working order (see Robinson v Sacred Heart School, 70 AD3d 666, 667; Alvarez v Masaryk Towers Corp., 15 AD3d 428, 429; Lester v New York City Hous. Auth., 292 AD2d 510, 511; see also Tarter v Schildkraut, 151 AD2d 414, 414-415); or where criminal activity reflects such a degree of preplanning, coordination, and sophistication that no level of building security would have prevented the crime (see Buckeridge v Broadie, 5 AD3d 298). There is no requirement that foreseeability be of criminal activity at the exact location where plaintiff was harmed or that it be of the same type of criminal conduct to which plaintiff was subjected (see Jacqueline S. v City of New York, 81 NY2d 288, 294).
The test in determining summary judgment motions involving negligent door security should therefore not focus on whether the crime committed within the building was "targeted" or "random," but whether or not, and to what extent, an alleged negligently maintained building entrance was a concurrent contributory factor in the happening of the criminal occurrence. In examining whether there is a triable issue of fact as to foreseeability and proximate cause requiring trial, a jury could conceivably conclude that the chronically broken lock at the building's front door provided Boney with an opportunity to attack the decedent, in a manner that might not otherwise have been possible, and that NYCHA could have foreseeably anticipated that its broken front door lock would result in the entry of intruders into the building for the commission of criminal activities against known or unknown specific tenants (see Terraro v New York City Hous. Auth., 116 AD3d 570). All of these actions should be examined sui generis, recognizing the unique facts of individualized matters, rather than simplistically or arbitrarily channeling them into either "targeted" or "random" criminal boxes that do not accommodate the factual nuances that may vary from case to case.
Here, while the precise nature and manner of Boney's crime could not necessarily have been anticipated, the alleged longstanding nonoperability of a front door lock to a residential building made it foreseeable that some form of criminal conduct could occur to the detriment of one or more of the residents therein, at some point in time. NYCHA failed to meet its prima facie burden to proffer any evidence that its alleged negligent maintenance of the door lock did not concurrently contribute to the execution of Boney's crime. As stated by the Court of Appeals in 1998 in a negligent premises security case, three years after this Court's decision in Harris, "[w]hen faced with a motion for summary judgment on proximate cause grounds, a plaintiff need not prove proximate cause by a preponderance of the evidence, which is plaintiff's burden at trial. Instead, in order to withstand summary judgment, a plaintiff need only raise a triable issue of fact regarding whether defendant's conduct proximately caused plaintiff's injuries" (Burgos v Aqueduct Realty Corp., 92 NY2d at 550).
Since NYCHA did not meet its prima facie burden establishing its entitlement to judgment as a matter of law dismissing the complaint (see Deinzer v Middle Country Pub. Lib., 120 AD3d 1292, 1293; Gonzalez v Long Is. Univ.-C.W. Post Campus, 15 AD3d 349), we need not consider the sufficiency of the plaintiffs' opposition papers (see Winegrad v New York Univ. Med. Ctr., 64 NY2d at 853; Zuckerman v City of New York, 49 NY2d at 562; Morales v Coram Metals, Corp., 51 AD3d 86, 95).
Under the circumstances of this case, we conclude that whether an operable locked door at the subject building would have deterred Boney from his premeditated attack is quintessentially a triable issue of fact to be decided by a jury, and is not an appropriate factual determination to be made by a court in the context of a motion for summary judgment (see Carasquilo v Macombs Vil. Assoc., 99 AD3d 455, 456).
III. Conclusion
The parties' remaining contentions either are without merit or have been rendered academic in light of our determination.
Accordingly, we agree with the Supreme Court's determination denying NYCHA's motion for summary judgment dismissing the complaint.
In light of the foregoing, the order is affirmed.
CHAMBERS, MILLER and BRATHWAITE NELSON, JJ., concur.
ORDERED that the order is affirmed, with costs.
ENTER:
Aprilanne Agostino
Clerk of the Court