# State of New York
# Court of Appeals

## OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 36
Bryan Scurry, &c., et al.,
    Respondents,
      v.
New York City Housing Authority,
    Appellant
(And Third-Party Actions.)
----------------
No. 37
Estate of Tayshana Murphy, &c.,
    Appellant,
      v.
New York City Housing Authority,
    Respondent,
et al.,
    Defendants.

Case No.36:

John F. Watkins, for appellant.
Brian J. Shoot, for respondents.

Case No. 37:

Steven Pecoraro, for appellant.
Patrick J. Lawless, for respondent.
Defense Association of New York, Inc. et al., amici curiae.

WILSON, Chief Judge:

Bridget Crushshon and Tayshana Murphy lived in two different public housing complexes owned and operated by the New York City Housing Authority (NYCHA). Their assailants, who were intruders onto the premises, entered their buildings through

exterior doors that, for the purpose of these appeals,[1] we assume did not have functioning locks. An intruder murdered Ms. Crushshon in the hallway of her building by immolating her; an intruder murdered Ms. Murphy by shooting her at point-blank range as she begged for her life. In both cases, plaintiffs sued NYCHA for negligence. In both cases, NYCHA admits that it had a duty to provide a locking exterior door. In both cases, NYCHA claimed entitlement to summary judgment on the theory that, because the assailants did not commit crimes of opportunity but instead had "targeted" their victims, NYCHA's negligence was not a proximate cause of the deaths.

We reiterate that general negligence principles apply to cases in which a tenant is injured by a third party's criminal attack, including the principle that "[a] defendant's negligence qualifies as a proximate cause where it is a substantial cause of the events which produced the injury" (*Turturro v City of New York*, 29 NY3d 469, 483 [2016] [internal quotation marks omitted]). As we explained in *Burgos v Aqueduct Realty Corp.*, there is "no need … to create a special rule for premises security cases, since the burden regularly placed on plaintiffs to establish proximate cause in negligence cases strikes the desired balance" between "a tenant's ability to recover for an injury caused by the landlord's negligence against a landlord's ability to avoid liability when its conduct did not cause any injury" (92 NY2d 544, 551 [1998]). We hold that though the sophisticated nature of an

---

[1] In *Murphy*, Supreme Court observed that the door was not functioning properly at the time of the occurrence. In *Scurry*, Supreme Court held that there was an issue of fact as to "whether NYCHA had fulfilled [its] duty to provide a safe environment at the Cypress Hills Houses"; at oral argument, counsel for NYCHA conceded the existence of an issue of fact as to the lock's operability.

attack may in some cases be relevant to the proximate cause analysis, the fact that an attack was "targeted" does not sever the causal chain between a landlord's negligence and a plaintiff's injuries as a matter of law. We thus affirm the Second Department's denial of summary judgment to NYCHA in *Scurry* and reverse the First Department's grant of summary judgment to NYCHA in *Murphy*.

I.

## *Scurry v NYCHA*

Ms. Crushshon was killed by Walter Boney, a former intimate partner who was violently abusive toward Ms. Crushshon during and after their relationship, when he gained access to her apartment building in NYCHA's Cypress Hills complex. Mr. Boney hid around a corner in Ms. Crushshon's hallway and attacked her as she left her apartment for work, then doused her in gasoline and lit her on fire. Ms. Crushshon died on the scene and Mr. Boney died at the hospital. Ms. Crushshon's son, Bryan, who had heard the commotion in the hallway and attempted to intervene, sustained severe burn injuries and remained in the hospital for months.

Ms. Crushshon's sons sued NYCHA, alleging that it had breached its duty to provide minimal security precautions to guard against the criminal acts of third persons in that it failed to provide exterior doors with properly functioning and adequate locks. NYCHA moved for summary judgment, arguing that the premeditated nature of Mr. Boney's attack severed any causal connection between the broken lock and the attack. Supreme Court denied NYCHA's motion, finding that material issues of fact remained.

The Appellate Division, Second Department, affirmed (193 AD3d 1 [2021]). NYCHA appeals by leave granted by the Appellate Division on a certified question. We now affirm.

*Estate of Murphy v NYCHA*

Eighteen-year-old Tayshana Murphy was fatally shot in the stairwell of her apartment building in NYCHA's Grant Houses complex. Her friends had been engaged in an escalating dispute with residents of a neighboring NYCHA complex in the days leading up to her murder. Ms. Murphy and her friends were outside the Grant Houses late one night when they saw Robert Cartagena and Tyshawn Brockington, two residents of a nearby housing complex involved in the earlier altercations, approaching the building. Ms. Murphy, along with her friends, ran into the building, pulling shut the exit-only side door, which was supposed to be self-locking. Surveillance video shows that one of the group then stuck his head out of that door to keep watch; when he retreated into the building, the video shows the door bouncing in its jamb, failing to close. About a minute later, Mr. Cartagena and Mr. Brockington slowly approached the building and tried to enter via the main entrance door. They were unable to open it. They then tried the side door, which readily opened. They encountered Ms. Murphy in the stairwell, where her friends heard her plead with them that she had nothing to do with the dispute before they then heard gunshots. Ms. Murphy was shot three times.

Ms. Murphy's mother, as administrator of Ms. Murphy's estate, sued on behalf of the estate, alleging that NYCHA was negligent in failing to provide properly functioning locks, failing to properly monitor surveillance equipment, and failing to provide adequate

security.    NYCHA  moved  for  summary  judgment,  submitting  evidence  from  Mr.

Cartagena's  criminal  trial,  which  showed  that  Ms.  Murphy  was  killed  in  an  act  of

vengeance  for  the  actions  of  other  Grant  residents  and  that  she  was  targeted  for  that

purpose.    NYCHA  also  submitted  an  affidavit  by  a  security  management  consultant,  who

averred  that  NYCHA's  maintenance  staff  performed  routine  inspections  of  all  doors  to

make  sure  that  they  were  locking  properly  and  that  caretaker  checklists  for  the  days  before

and  after  the  murder  indicated  that  the  door  was  working  properly.  The  consultant  opined

that  no  security  device  would  have  deterred  the  attackers.

In  opposition,  the  estate  administrator  submitted  surveillance  footage  of  the

building,  which  showed  the  attackers  entering  through  a  visibly  malfunctioning  door,  as

well  as  an  affidavit  in  which  Ms.  Murphy's  mother  stated  that  the  side  door  was  supposed

to  be  an  automatically  locking,  exit-only  door,  but  that  it  had  never  locked  the  entire  time

she  had  lived  there.  She  also  stated  that  she  regularly  complained  about  the  side  door,  both

by  telephone  and  in  person  at  the  management  office.    The  administrator  also  submitted  an

affidavit  from  a  locksmith  who  examined  the  footage,  NYCHA  work  orders,  photos,  and

the  door  itself.    The  locksmith  opined  that  the  electromagnetic  door  lock  was  not  working

as  intended  and  stated  that  the  video  evidence  flatly  contradicted  NYCHA's  caretaker

checklists.

Supreme  Court  granted  NYCHA's  motion.    Although  it  concluded  that  "clearly[,]

the  door  was  not  functioning  properly"  at  the  time  of  the  occurrence,  it  reasoned  that

because  the  attack  on  Ms.  Murphy  was  targeted,  it  was  an  "unforeseeable  superseding

intervening  cause"  as  a  matter  of  law.  The  Appellate  Division,  First  Department,  affirmed,

holding that because Ms. Murphy's "killers were intent on gaining access to the building

… it does not take a leap of the imagination to surmise that [they] would have gained

access" to the building even if the door had been locked, which "negates the unlocked door

as a proximate cause of the harm that befell Murphy, and makes her assailants' murderous

intent the only proximate cause" (193 AD3d 503, 509 [1st Dept 2021]).  We granted the

Estate's motion for leave to appeal, and now reverse.

II.

Landlords have a common-law duty to take minimal precautions to protect tenants

from foreseeable harm, including a third party's foreseeable criminal conduct (*see Burgos*,

92 NY2d at 548).  That includes what we have deemed "the most rudimentary security—

e.g., locks for the entrances" of apartment buildings (*Jacqueline S. v City of New York*, 81

NY2d 288, 295 [1993]).  NYCHA admits it bears that duty.

A failure to supply minimal security breaches that duty.  In *Murphy*, Supreme Court

noted that the door's lock was not functioning.  In *Scurry*, Supreme Court held, and

NYCHA concedes for the purpose of this appeal, that there was an issue of fact as to

"whether NYCHA had fulfilled [its] duty to provide a safe environment at the Cypress

Hills Houses."  Thus, in both cases, plaintiffs at a minimum demonstrated questions of fact

as to breach.

The primary issue on these appeals is whether NYCHA was entitled to summary

judgment on the issue of proximate cause.  "A defendant's negligence qualifies as a

proximate cause where it is a substantial cause of the events which produced the injury"

(*Turturro*, 28 NY3d at 483 [internal citations and quotation marks omitted]). "When faced

with a motion for summary judgment on proximate cause grounds, a plaintiff need not prove proximate cause by a preponderance of the evidence, which is plaintiff's burden at trial. Instead, in order to withstand summary judgment, a plaintiff need only raise a triable issue of fact regarding whether defendant's conduct proximately caused plaintiff's injuries" (*Burgos*, 92 NY2d at 550).

In *Burgos*, we held that proximate cause in a premises security case may be "established only if the assailant gained access to the premises through a negligently maintained entrance" (*id.*). Indeed, the risk that an intruder will enter the building and harm residents is the very risk that renders a landlord negligent for failing to provide locked exterior doors. Where minimal security measures, such as a locked door or lobby attendant, "would have had the effect of deterring" an attacker, a jury can infer that the absence of such measures proximately caused an attack (*Nallan v Helmsley-Spear, Inc.*, 50 NY2d 507, 521 [1980]). This is so regardless of "whether the crime in question was one of random violence or was a deliberate, planned 'assassination' attempt such as apparently occurred in [*Nallan*]" (*id.*). Thus, where the defendant fails to demonstrate on its motion for summary judgment that, as a matter of law, minimal security measures would not have deterred the intruder, the defendant is not entitled to summary judgment on proximate cause (*id.*).

III.

NYCHA argues that as a matter of law, its negligence could not have proximately caused the death of Ms. Crushshon or Ms. Murphy because they were the victims of targeted attacks, and landlords do not have a "duty to outwit or outthink those who are

determined to overcome" the "minimal steps a landowner is required to take to secure premises" (*Estate of Murphy*, 193 AD3d 503, 509 [1st Dept 2021]). In other words, NYCHA contends that where a landlord offers evidence that an attack is "targeted," that landlord has demonstrated that the assailant would have gained access to the building even if the door had been properly secured; to successfully oppose a motion for summary judgment, the plaintiff must rebut that demonstration by showing that a locked door would have in fact deterred the assailant. In the Appellate Division's view, because Mr. Cartagena and Mr. Brockington "were intent on gaining access to the building" and "[i]n reality . . . [it] is hardly ever the case" that "minimal precautions would have actually prevented a determined assailant from gaining access . . . it does not take a leap of the imagination to surmise" that they would have killed Ms. Murphy even had the door been locked. Thus, according to the Appellate Division, proximate cause was "negate[d]" as a matter of law (*id.* at 509).

That reasoning mistakes a patently factual determination—whether a locked door would have prevented an attack—for a legal one—*i.e* , that an attacker's intent is a superseding cause as a matter of law. It is well settled that "[g]iven the unique nature of the inquiry in each case, proximate cause is generally an issue for the trier of fact, so long as the court has been satisfied that a prima facie case has been established and the evidence could support various reasonable inferences" (*Turturro*, 28 NY3d at 483 [internal quotation marks omitted]; *see e.g.*, *Hain*, 28 NY3d 524; *Derdiarian.* 51 NY2d at 315). "[I]n order to withstand summary judgment, a plaintiff need only raise a triable issue of fact regarding whether defendant's conduct proximately caused plaintiff's injuries" (*Burgos*, 92 NY2d at

550). Plaintiffs in both *Scurry* and *Murphy* raised triable issues of fact regarding proximate cause; in both cases, proximate cause should be assessed by the finder of fact.

IV.

Though NYCHA frames these fact questions as issues of superseding cause as a matter of law, we have repeatedly emphasized that just "[a]s with determinations regarding proximate cause generally, '[b]ecause questions concerning what is foreseeable and what is normal may be the subject of varying inferences,' whether an intervening act is foreseeable or extraordinary under the circumstances 'generally [is] for the fact finder to resolve" (*Turturro*, 28 NY3d at 484, quoting *Derdiarian*, 51 NY2d at 315). "[W]here the risk of harm created by a defendant's conduct corresponds to that which actually results[,] . . . [t]he determination of proximate cause is best left for the factfinder" (*Hain*, 28 NY3d at 530). Only in "rare cases" can the issue be decided as a matter of law (*id.*).

There "may be more than one proximate cause of an injury," and it is "well settled … that where the acts of a third person intervene between the defendant's conduct and the plaintiff's injury, the causal connection is not automatically severed" (*Turturro*, 28 NY3d at 483-484 [internal quotation marks omitted]). Instead, just as with general determinations of proximate cause, when the issue of proximate cause involves an intervening act, "liability turns on whether the intervening act is a *normal or foreseeable consequence* of the situation created by the defendant's negligence" (*Hain v Jamison*, 28 NY3d 524, 529 [2016]). It is "[o]nly where 'the intervening act is extraordinary under the circumstances, not foreseeable in the normal course of events, or independent of or far removed from the defendant's conduct,' [that it] may … possibly 'break[ ] the causal nexus' " (*id.*). But "[a]n

intervening act may not serve as a superseding cause, and relieve an actor of responsibility, where the risk of the intervening act occurring is the very same risk which renders the actor negligent" (*Derdiarian v Felix Contr. Corp.*, 51 NY2d 308, 316 [1980]).

Here, the risk created by the nonfunctioning door locks—that intruders would gain access to the building and harm residents—is exactly the "risk that came to fruition" (*Hain*, 28 NY3d at 533). It was not the trial court's role, on summary judgment, to assess the fact-bound question of whether the intruders in *Scurry* or *Murphy* would have persevered in their attacks had the doors been securely locked. This is not to say that the sophistication and planning of an attack is irrelevant to the factfinder's determination of proximate cause, or even that it could never rise to such a degree that it would sever the proximate causal link as a matter of law (*cf. Buckeridge v Broadie*, 5 AD3d 298, 299 [1st Dept 2004] [robbers dressed in work clothes, orange vests, and helmets, and carrying test tubes and folders, gained entry to defendant's house while posing as environmental protection workers investigating a water main break in the area]). But neither *Scurry* nor *Murphy* approaches that level.

In *Scurry*, the plaintiffs demonstrated that Mr. Boney confronted Ms. Crushshon in the hallway, restrained her, and doused her with a flammable liquid, then set himself, Crushshon, Bryan, and the hallway on fire. Though the manner in which the attack was committed is shocking, we cannot say that an attack by a non-tenant domestic abuser is so "independent of or far removed from the defendant's conduct" in failing to provide locking

doors that it "breaks the causal nexus" as a matter of law (*Mazella v Beals*, 27 NY3d 694, 706 [2016] [internal quotations omitted]).[2]

In *Murphy*, NYCHA's claimed entitlement to summary judgment is even weaker. Surveillance video shows Mr. Cartagena and Mr. Brockington attempt to enter through a locked door. Upon finding it locked, they did not break through it or attempt to gain access "by following another person in or forcing such a person to let them in" (193 AD at 509)— instead, they tried the side door, which was unlocked. The evidence suggests that Mr. Cartagena and Mr. Brockington would have attacked any of the group of six that they had set their sights on. Even if the attackers had been determined to enter despite a locked door, a jury could find that the added time it would have taken them to gain entry would have allowed Ms. Murphy to escape to the safety of her own or a friend's apartment. This was hardly the type of sophisticated, meticulously planned and executed attack that might possibly sever the causal chain as a matter of law; instead, it was the heartbreaking result of a volatile situation that may or may not have cooled off with time. Thus, in *Murphy*, the

---

[2] NYCHA's suggestion that to hold a landlord liable, a tenant must prove that an attacker would not have "picked another spot to lie in wait, and just as easily have carried out his murderous act" is not supported by our precedent or by common sense. Victims of targeted attacks should not be afforded less protection by their landlords simply because they are targeted. Such a rule would have a particularly cruel impact on victims of domestic violence. Domestic abusers like Mr. Boney are frequently extremely determined. Their victims should not, simply due to their abusers' determination, be prevented from recovering for their landlords' "failure to supply even the most rudimentary security—e.g., locks for the entrances" of their homes (*Jacqueline S*, 81 NY2d at 295). The fact that women are frequently the victims of violent acts carried out by obsessive abusers should not deprive them of a minimum measure of safety in their own homes and, sadly, can hardly be said to be unforeseeable.

Appellate Division improperly drew conclusions as a matter of law about the level of determination and ability that Ms. Murphy's assailants had to enter the building and cause her harm. The mental state of an assailant and his ability to circumvent security measures at a given property and time are not susceptible to determinations as a matter of law on summary judgment. A factfinder at trial could have found that a functioning lock on the side door would have deterred Mr. Cartagena and Mr. Brockington from pursuing the group into the building. Hypotheticals about what would have occurred if the side door had been locked—that "Cartagena and Brockington would have gained access to the building by following another person in or forcing such a person to let them in" (193 AD3d at 509)— are quintessentially questions of fact to be resolved at trial.

In sum, what might have happened had the doors in both buildings worked properly is a question of fact. We cannot say that, as a matter of law, it is "extraordinary under the circumstances [or] not foreseeable in the normal course of events" that an abusive former intimate partner or a violent neighboring gang would enter through a door negligently maintained by a landlord and injure a resident (*Mazella*, 27 NY3d at 706). NYCHA thus did not meet its burden as a movant for summary judgment to demonstrate the absence of material issues of fact as to proximate cause (*see, e.g.*, *Vega v Restani Const. Corp.*, 18 NY3d 499, 503 [2012]).

V.

Finally, in *Murphy*, NYCHA contends that it was entitled to summary judgment because it demonstrated, as a matter of law, that it did not have notice of the broken lock on the door in question. Although the Appellate Division did not address that issue,

Supreme Court concluded that plaintiff had not sufficiently rebutted NYCHA's prima facie showing that it had no notice the door was defective.

However, a plaintiff in a premises security suit need not prove that a landlord had notice to defeat summary judgment. On a motion for summary judgment, facts must be viewed in the light most favorable to the non-moving party, and summary judgment must be denied where the moving party fails to demonstrate the absence of any material issues of fact (*see, e.g.*, *Vega* at 503). Of course, notice is relevant to the factual question of whether NYCHA breached its duty to provide minimal security measures.

Here, NYCHA's own maintenance records raise questions of fact regarding whether it had notice of the broken door lock. Though NYCHA's records indicate that the door worked properly on the mornings before and after the attack, other inconsistencies and omissions in NYCHA's records render them inadequate to demonstrate lack of notice as a matter of law. For instance, as noted above, Supreme Court observed that the lock clearly was not working during the early hours of September 11, 2011. NYCHA's records indicate it was working the next day, but there is no record of a repair having taken place between the attack and the record indicating the lock was in working condition. In addition, there are questions of fact as to whether the employees identified on an earlier work order actually could have made the repairs specified by the order. Far from demonstrating the absence of triable fact questions as to breach, NYCHA's submissions raise issues of fact regarding the accuracy of its maintenance records.

In any event, Ms. Murphy's estate raised triable issues of material fact with respect to notice. Ms. Murphy's mother submitted an affidavit stating that she made multiple

complaints about the door not locking. The estate also submitted an affidavit from a locksmith opining that the door had not been fixed since NYCHA was made aware of the problem.

In both cases, the negligence claims should advance to a jury trial. Accordingly, the order of the Appellate Division in *Scurry* should be affirmed, with costs, and the certified question answered in the affirmative. The order of the Appellate Division in *Murphy* should be reversed, with costs, and the motion by defendant New York City Housing Authority for summary judgment dismissing the complaint as against it denied.

For No. 36: Order affirmed, with costs, and certified question answered in the affirmative. Opinion by Chief Judge Wilson. Judges Rivera, Garcia, Singas, Cannataro and Troutman concur. Judge Halligan took no part.

For No. 37: Order reversed, with costs, and motion by defendant New York City Housing Authority for summary judgment dismissing the complaint as against it denied. Opinion by Chief Judge Wilson. Judges Rivera, Garcia, Singas, Cannataro and Troutman concur. Judge Halligan took no part.

Decided May 23, 2023